## BLOCKBURGER v. UNITED STATES.

No. 374. Argued November 24, 1931.—Decided January 4, 1932.

300

*Mr. Harold J. Bandy* was on the brief for petitioner.

*Mr. Claude R. Branch*, with whom *Solicitor General Thatcher, Assistant Attorney General Dodds*, and *Mr. Harry S. Ridgely* were on the brief, for the United States.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

The petitioner was charged with violating provisions of the Harrison Narcotic Act: c. 1, § 1, 38 Stat. 785, as amended by c. 18, § 1006, 40 Stat. 1057, 1131, (U. S. C., Title 26, § 692);[1] and c. 1, § 2, 38 Stat. 785, 786, as amended, (U. S. C., Title 26, § 696).[2] The indictment

---

[1] "It shall be unlawful for any person to purchase, sell, dispense, or distribute any of the aforesaid drugs [opium and other narcotics] except in the original stamped package or from the original stamped package; and the absence of appropriate tax-paid stamps from any of the aforesaid drugs shall be prima facie evidence of a violation of this section by the person in whose possession same may be found; . . ."

[2] "It shall be unlawful for any person to sell, barter, exchange, or give away any of the drugs specified in section 691 of this title, except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Commissioner of Internal Revenue."

contained five counts. The jury returned a verdict against petitioner upon the second, third and fifth counts only. Each of these counts charged a sale of morphine hydrochloride to the same purchaser. The second count charged a sale on a specified day of ten grains of the drug not in or from the original stamped package; the third count charged a sale on the following day of eight grains of the drug not in or from the original stamped package; the fifth count charged the latter sale also as having been made not in pursuance of a written order of the purchaser as required by the statute. The court sentenced petitioner to five years imprisonment and a fine of $2,000 upon each count, the terms of imprisonment to run consecutively; and this judgment was affirmed on appeal. 50 F. (2d) 795.

The principal contentions here made by petitioner are as follows: (1) that, upon the facts, the two sales charged in the second and third counts as having been made to the same person, constitute a single offense; and (2) that the sale charged in the third count as having been made not from the original stamped package, and the same sale charged in the fifth count as having been made not in pursuance of a written order of the purchaser, constitute but one offense for which only a single penalty lawfully may be imposed.

*One.* The sales charged in the second and third counts, although made to the same person, were distinct and separate sales made at different times. It appears from the evidence that shortly after delivery of the drug which was the subject of the first sale, the purchaser paid for an additional quantity, which was delivered the next day. But the first sale had been consummated, and the payment for the additional drug, however closely following, was the initiation of a separate and distinct sale completed by its delivery.

The contention on behalf of petitioner is that these two sales, having been made to the same purchaser and

following each other with no substantial interval of time between the delivery of the drug in the first transaction and the payment for the second quantity sold, constitute a single continuing offense. The contention is unsound. The distinction between the transactions here involved and an offense continuous in its character, is well settled, as was pointed out by this court in the case of *In re Snow*, 120 U. S. 274. There it was held that the offense of cohabiting with more than one woman, created by the Act of March 22, 1882, c. 47, 22 Stat. 31, was a continuous offense, and was committed, in the sense of the statute, where there was a living or dwelling together as husband and wife. The court said (pp. 281, 286):

" It is, inherently, a continuous offence, having duration; and not an offense consisting of an isolated act.

.　　　.　　　.　　　.　　　.

" A distinction is laid down in adjudged cases and in textwriters between an offence continuous in its character, like the one at bar, and a case where the statute is aimed at an offence that can be committed *uno ictu*."

The Narcotic Act does not create the offense of engaging in the business of selling the forbidden drugs, but penalizes any sale made in the absence of either of the qualifying requirements set forth. Each of several successive sales constitutes a distinct offense, however closely they may follow each other. The distinction stated by Mr. Wharton is that " when the impulse is single, but one indictment lies, no matter how long the action may continue. If successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie." Wharton's Criminal Law, 11th ed., § 34. Or, as stated in note 3 to that section, " The test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately . . . If the latter, there can be but one penalty."

In the present case, the first transaction, resulting in a sale, had come to an end. The next sale was not the result of the original impulse, but of a fresh one—that is to say, of a new bargain. The question is controlled, not by the *Snow* case, but by such cases as that of *Ebeling* v. *Morgan*, 237 U. S. 625. There the accused was convicted under several counts of a willful tearing, etc., of mail bags, with intent to rob. The court (p. 628) stated the question to be, " whether one who, in the same transaction, tears or cuts successively mail bags of the United States used in conveyance of the mails, with intent to rob or steal any such mail, is guilty of a single offense or of additional offenses because of each successive cutting with the criminal intent charged." Answering this question, the court, after quoting the statute, § 189, Criminal Code (U. S. C., Title 18, § 312), said (p. 629):

" These words plainly indicate that it was the intention of the lawmakers to protect each and every mail bag from felonious injury and mutilation. Whenever any one mail bag is thus torn, cut or injured, the offense is complete. Although the transaction of cutting the mail bags was in a sense continuous, the complete statutory offense was committed every time a mail bag was cut in the manner described, with the intent charged. The offense as to each separate bag was complete when that bag was cut, irrespective of any attack upon, or mutilation of, any other bag."

See also *In re Henry*, 123 U. S. 372, 374; *In re De Bara*, 179 U. S. 316, 320; *Badders* v. *United States*, 240 U. S. 391, 394; *Wilkes* v. *Dinsman*, 7 How. 89, 127; *United States* v. *Daugherty*, 269 U. S. 360; *Queen* v. *Scott*, 4 Best & S. (Q. B.) 368, 373.

*Two.* Section 1 of the Narcotic Act creates the offense of selling any of the forbidden drugs except in or from the original stamped package; and § 2 creates the offense of selling any of such drugs not in pursuance of a written

order of the person to whom the drug is sold. Thus, upon the face of the statute, two distinct offenses are created. Here there was but one sale, and the question is whether, both sections being violated by the same act, the accused committed two offenses or only one.

The statute is not aimed at sales of the forbidden drugs *qua* sales, a matter entirely beyond the authority of Congress, but at sales of such drugs in violation of the requirements set forth in §§ 1 and 2, enacted as aids to the enforcement of the stamp tax imposed by the act. See *Alston* v. *United States,* 274 U. S. 289, 294; *Nigro* v. *United States,* 276 U. S. 332, 341, 345, 351.

Each of the offenses created requires proof of a different element. The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. *Gavieres* v. *United States,* 220 U. S. 338, 342, and authorities cited. In that case this court quoted from and adopted the language of the Supreme Court of Massachusetts in *Morey* v. *Commonwealth,* 108 Mass. 433: "A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." Compare *Albrecht* v. *United States,* 273 U. S. 1, 11–12, and cases there cited. Applying the test, we must conclude that here, although both sections were violated by the one sale, two offenses were committed.

The case of *Ballerini* v. *Aderholt,* 44 F. (2d) 352, is not in harmony with these views and is disapproved.

*Three.* It is not necessary to discuss the additional assignments of error in respect of cross-examination, admission of testimony, statements made by the district

attorney to the jury, claimed to be prejudicial, and instructions of the court. These matters were properly disposed of by the court below. Nor is there merit in the contention that the language of the penal section of the Narcotic Act, " any person who violates or fails to comply with any of the requirements of this act " shall be punished, etc., is to be construed as imposing a single punishment for a violation of the distinct requirements of §§ 1 and 2 when accomplished by one and the same sale. The plain meaning of the provision is that each offense is subject to the penalty prescribed; and if that be too harsh, the remedy must be afforded by act of Congress, not by judicial legislation under the guise of construction. Under the circumstances, so far as disclosed, it is true that the imposition of the full penalty of fine and imprisonment upon each count seems unduly severe; but there may have been other facts and circumstances before the trial court properly influencing the extent of the punishment. In any event, the matter was one for that court, with whose judgment there is no warrant for interference on our part.

*Judgment affirmed.*