**UNITED STATES of America,**
Appellee,

v.

**Dominick SABELLA and Charles La-**
**Cascia, Appellants.**

**No. 116, Docket 25767.**

United States Court of Appeals
Second Circuit.

Argued Oct. 8, 1959.

Decided Nov. 13, 1959.

Cornelius W. Wickersham, Jr., U. S. Atty., Brooklyn, N. Y. (Marie L. McCann, Asst. U. S. Atty., Brooklyn, N. Y., on brief), for appellee.

Menahem Stim, New York City, for appellant, Sabella.

Maurice Edelbaum, New York City, submitted a brief for appellant, LaCascia.

Before LUMBARD, WATERMAN and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge.

An inadvertent error made by Congress in 1954 in recasting the provisions of the Internal Revenue Code relating to the sale of narcotics has given rise to the problems in the law of double jeopardy which this case presents. Reluctant as we are that two guilty defendants should profit from a mistake that has in no wise prejudiced them, we think their pleas of double jeopardy should have been sustained and accordingly reverse the judgments convicting them of a second offense.

In the course of enacting the Internal Revenue Code that was approved August 16, 1954, Congress revised the arrangement of various provisions which impose taxes upon the traffic in narcotic drugs and make unlawful conduct interfering with the collection of such taxes. One of these is the section, now designated 26 U.S.C. § 4705 (formerly § 2554 of the 1939 Internal Revenue Code) which makes it "unlawful for any person to sell, barter, exchange, or give away narcotic drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary or his delegate." This was included in Sub-Part A, Part I, Sub-Chapter A of Chapter 39. But 26 U.S.C. § 7237, which prescribes the penalties for various narcotic offenses, referred only to Sub-Part C of Part I, the occupational tax on persons engaged in the narcotic traffic. The first Public Act passed by the 84th Congress repaired this omission. Act of January 20, 1955, 69 Stat. 3.

Thereafter, in August, 1955, appellants were indicted for violating 26 U.S.C. § 4705(a) by the sale of a specified quantity of heroin to one Zirilli within the Eastern District of New York on or about January 17, 1955, three days before the law correcting the inadvertent omission took effect. They pleaded guilty. Apparently neither the Court, the United States Attorney nor the defendants realized that the crime had been committed before the correcting statute had become law. On October 17, 1955, the Court sentenced Sabella to four years in prison and a $1,000 fine and LaCascia to three years in prison and a $500 fine. Defendants began to serve their sentences; the fines were not paid.

In April, 1956, Sabella and LaCascia sought release from imprisonment by writs of habeas corpus on the ground that at the date of the offense there was no law authorizing the sentence.

On May 1, 1956, the United States Attorney for the Eastern District of New York moved to set aside the sentences as not authorized. There being no opposition, the Court granted the motions and directed that an order be submitted. The order, made on May 2, 1956, not only vacated the sentences, as sought in the United States Attorney's motion, but also set aside the judgments of conviction and dismissed the indictment.

On May 10, 1956, a new indictment was returned, charging that, on the same date specified in the first indictment, the defendants had sold Zirilli the same quantity of heroin which had been imported into the United States in violation of 21 U.S.C.A. §§ 173 and 174. Concededly this was the identical act involved in the first indictment. The defendants pleaded that this violated the provision of the Fifth Amendment that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb," but admitted the facts and consented to trial by the Court. Relying on Blockburger v. United States, 1932, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306, Judge Rayfiel held that the offense charged in the second indictment was different from that charged in the first; he held also that the proceedings in 1955 did not constitute former jeopardy since no sentence could have been legally imposed. He therefore overruled the pleas of double jeopardy, sentenced Sabella to 15 months in prison and a fine of $250 and LaCascia to one year in prison and a fine of $250. It is noted that the sum of the new prison sentences and the time defendants had already served was less than the original sentences and much less than the maximum authorized, and that, as indicated above, the fines imposed in the original sentences had not been paid.

■■ We meet at the outset the question whether defendants, having themselves attacked the original sentences for their violation of 26 U.S.C. § 4705, have thereby lost their right to plead double jeopardy against renewed prosecution for the same act under 21 U.S.C.A. §§ 173 and 174. At least since United States

v. Ball, 1896, 163 U.S. 662, 672, 16 S. Ct. 1192, 41 L.Ed. 300, it has been "quite clear that a defendant, who procures a judgment against him upon an indictment to be set aside, may be tried anew upon the same indictment, or upon another indictment, for the same offense of which he had been convicted." This rule has been held to apply also where the initial judgment has been successfully attacked collaterally by habeas corpus, Bryant v. United States, 8 Cir., 1914, 214 F. 51; United States v. Lowrey, D. C.W.D.Pa.1948, 77 F.Supp. 301, affirmed 3 Cir., 1949, 172 F.2d 226. Since defendants could thus have been resentenced consistently with the Fifth Amendment for their violation of 26 U.S.C. § 4705 if a valid sentence had been possible, In re Bonner, 1894, 151 U.S. 242, 260, 14 S.Ct. 323, 38 L.Ed. 149; see Murphy v. Commonwealth of Massachusetts, 1900, 177 U.S. 155, 20 S.Ct. 639, 44 L.Ed. 711, it might be thought that the Amendment was also no bar to their being tried and convicted for the violation of 21 U.S. C.A. §§ 173 and 174 arising from the same act.

We do not think this follows. Here only the sentence and not the judgment of conviction was unlawful and was attacked. While the petitions for habeas corpus are not before us, it seems that these assailed only the unlawful sentence. So, for that matter, did the government's motion in the Eastern District. Only the order on the motion purported to vacate the conviction and dismiss the indictment. The order thus went beyond the motion, and both were the government's doing, not the defendants'. Yet, as we hold below, it was exposure to a valid judgment of conviction that constituted defendants' initial jeopardy.

We come therefore to the two grounds on which the District Court held that defendants had not sustained their plea:

■■ (1) *The claim of no prior jeopardy.* There is some degree of unreality in a claim that a convicted defendant who has been in jail has not been in jeopardy. Indeed, such a contention has been characterized as "in the vein of The

Mikado," King v. United States, 1938, 69 App.D.C. 10, 98 F.2d 291, 293. Nevertheless we take it as true that not only an acquittal but also a conviction "before a court having no jurisdiction is, of course, like all the proceedings in the case, absolutely void, and therefore no bar to subsequent indictment and trial in a court which has jurisdiction of the offense." United States v. Ball, supra, 163 U.S. at page 669, 16 S.Ct. at page 1194; People ex rel. Hillman v. Hull, 1928, 131 Misc. 253, 227 N.Y.S. 360. The government asserts that was the situation here since the District Court could not impose a lawful sentence on the first indictment.

As has often been pointed out, the legal lexicon knows no word more chameleon-like than "jurisdiction." In this case the District Court did have jurisdiction in the basic sense that "A cause of action under our law was asserted here, and the court had power to determine whether it was or was not well founded in law and effect." Lauritzen v. Larsen, 1953, 345 U.S. 571, 575, 73 S.Ct. 921, 924, 97 L.Ed. 1254. See Roche v. Evaporated Milk Ass'n, 1943, 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185. The District Court had been endowed with jurisdiction of "all offenses against the laws of the United States," 18 U.S.C. § 3231. Defendants were charged with action that had been condemned by Congress in the language usual for defining offenses against the United States—indeed, a criminal penalty for it had long been imposed. The action charged, which was unquestionably an "offense" prior to August 16, 1954, and after January 20, 1955, did not cease to be one in the interval. The District Court likewise had jurisdiction over the persons of the defendants and territorial jurisdiction over the offense charged, F. R.Cr.P. 18, 18 U.S.C.A. It therefore had power to render a judgment convicting the defendants, despite the facts that it could not lawfully impose a penalty and that its doing so constituted that higher degree of error which rendered the sentence subject not merely to being re-

versed on appeal but to being vacated on collateral attack.

There is more learning on the question whether trial under such circumstances is jeopardy than might be thought. It begins with the famous judgment in Vaux's Case, 4 Coke 44, 76 Eng.Rep. 992, in 33 Eliz. I, that Vaux's plea of *autrefois acquit* for the murder of Nicholas Ridley by poisoning was not a good plea because the first indictment had alleged only that the unfortunate Nicholas had "received and drunk" and thereafter died of poisoning, without averring, with the nicety demanded in that more accurate age, that what Nicholas drank and what Nicholas died of were the same. Coke adds that the justices also stated that "if a man be convicted either by verdict or confession upon an insufficient indictment, and no judgment thereupon given, he may be again indicted and arraigned, because his life was never in jeopardy and the law wants its end." Sir Matthew Hale, although thinking "that judgment in Vaux's case was one of the hardest I ever met with in criminal causes," gave currency both to the judgment and to the dictum in his Pleas of the Crown, Vol. 2, *248, *393. Two centuries later the Supreme Court found the judgment in Vaux's case equally harsh and rejected it, United States v. Ball, supra, 163 U.S. at pages 666, 669, 16 S.Ct. at pages 1193, 1194, without passing on the dictum. In contrast to the statement in Coke and Hale, Blackstone says in 4 Commentaries *336 that "the plea of *autrefois convict*, or a former conviction for the same identical crime, though no judgment was ever given or perhaps ever will be (being suspended by the benefit of clergy or other causes), is a good plea in bar to an indictment"; and Blackstone spoke with pre-eminent authority to the framers of the Bill of Rights. See Burke, Speech on Conciliation with America, 1 Works (Bohn's ed.) 467.

These and other early authorities are reviewed in two New York cases, Shepherd v. People, 1862, 25 N.Y. 406, and Hartung v. People, 1863, 26 N.Y. 167, which had to deal with some rather

clumsy laws altering the punishment for various offenses adopted by the New York legislatures of 1860 and 1861. In Shepherd, which arose from a section of the 1860 statute changing the punishment for arson from death to life imprisonment, a divided court held that Shepherd, who had been unlawfully given the new punishment for an offense antedating the 1860 statute, would be in double jeopardy if retried and resentenced either under the prior law or under an 1861 statute restoring the old punishment for pre-1860 crimes. In Hartung, all the judges held the same as to a murderess who had first received a valid sentence of death before 1860, who had then been given an invalid sentence under the 1860 Act (reversed in 22 N.Y. 95) of one year's imprisonment at hard labor to be followed by death and whom the People now proposed to retry under the remedial Act of 1861 restoring the pre-1860 penalty. To be sure, Hartung is distinguishable since the murderess had received a vaid sentence after her first trial, but the opinions in both cases suggest strong partiality for the Blackstone view as against the dictum in Vaux's case. Referring to these New York cases, the Court of Appeals of Georgia held fifty years later that conviction under a statute prescribing no penalty supported a plea of *autrefois convict* against an indictment for the same acts under another statute, since the conviction alone deprived the defendant of various civil rights, Jenkins v. State, 1914, 14 Ga.App. 276, 80 S.E. 688.

We think the Georgia court reached the right result and for the right reason. A judgment of conviction of crime may have serious consequences even if unaccompanied by a valid sentence. In many states persons convicted of crime are deprived of the franchise. E. g., Fla.Stat. § 97.041 (1957); Va.Code § 24–18 (1950). Many states have second offender laws, and, although the majority view is said to be to the contrary, a minority holds that a judgment of conviction is a prior offense even though no sentence was imposed. Annotation, 5 A. L.R.2d 1080, 1104–1108; see, e. g., Peo-ple v. Funk, 1948, 321 Mich. 617, 33 N.W. 2d 95, 5 A.L.R.2d 1077. Under the very section of the Internal Revenue Code, 26 U.S.C. § 7237(a), prescribing the penalties for narcotic offenses, defendants' earlier conviction might constitute a prior offense, at least as § 7237(a) stood until July 18, 1956, United States v. Buia, 2 Cir., 1956, 236 F.2d 548, and, as the government is contending in a case now before us, United States v. Tom Toy, No. 25710, 273 F.2d 625, after that date as well. The Immigration and Nationality Act, 8 U.S.C.A. § 1251(a) (4), makes conviction of two crimes involving moral turpitude a ground for deportation of an alien "regardless of whether confined therefor." The same Act, 8 U.S.C.A. § 1427(a), demands good moral character for five years as a prerequisite to naturalization; and under 8 U.S.C.A. § 1101 (f) persons "convicted" of certain crimes cannot meet the statutory test. Other instances, including one of which lawyers need no reminder, could readily be assembled. We hold therefore that the 1955 indictment placed defendants in jeopardy since the District Court had power to render a lawful judgment of conviction.

 (2) *The claim that the second indictment charged a different offense.* The government claims that although the two indictments related to precisely the same sale, the second charged the offense of selling illegally imported heroin in violation of 21 U.S.C.A. §§ 173 and 174, and that this differed from the offense, charged in the first, of selling heroin without a written order in violation of 26 U.S.C. § 4705. Yet the government could sustain the second indictment with the self-same evidence needed to prove the first. For 21 U.S.C.A. § 174 provides that "whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall. be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury." Moreover, if the point be material, it is likewise true that all the government needed to establish a *prima*

*facie* case on the first indictment was to prove the same sale which made a sufficient case under the second. For "It has repeatedly been held that in prosecutions under § 2554(a) [the corresponding section in the 1939 Code] it is not incumbent upon the government either to allege (Manning v. United States, 8 Cir., 275 F. 29; Hurwitz v. United States, 8 Cir., 299 F. 449, 450, certiorari denied 266 U.S. 613, 45 S.Ct. 95, 69 L.Ed 468; Nigro v. United States, 8 Cir., 117 F.2d 624, 629 and cases cited) or to prove (Martinez v. United States, 5 Cir., 25 F.2d 302, 303; Sauvain v. United States, 8 Cir., 31 F.2d 732, 733) that a purchaser of opium did so without a written order on the form prescribed." Chin Gum v. United States, 1 Cir., 1945, 149 F.2d 575, 577.

The case therefore comes within even the narrowest concept of the protection accorded by the double jeopardy clause, namely, where, as said in Morey v. Commonwealth, 1871, 108 Mass. 433, 434, quoted with approval in Ex parte Nielsen, 1889, 131 U.S. 176, 187–188, 9 S.Ct. 672, 33 L.Ed. 118, and Gavieres v. United States, 1911, 220 U.S. 338, 342, 31 S.Ct. 421, 55 L.Ed. 489, "the evidence required to support a conviction upon one of them [the indictments] would have been sufficient to warrant a conviction upon the other." Gavieres is not to the contrary. For the Court there rested its conclusion against double jeopardy upon the foundation that although the two indictments related to the same conduct, each required proof of a significant fact not required to sustain the other—offensive conduct in a public place open to public view under the first indictment, and an insult to a public official under the second. Where, as here, proof of the same sale made a *prima facie* case for the government under each indictment, a holding that the two indictments charged crimes different from the standpoint of double jeopardy would be to give altogether undue effect to what Mr. Justice Rutledge, when Associate Justice of the Court of Appeals for the District of Columbia, termed "refinements * * * so thin that, if they hold, the old and

substantial protection against trial or conviction more than once for the same offense is but a shadow of its intended self." District of Columbia v. Buckley, 1942, 75 U.S.App.D.C. 301, 128 F.2d 17, 22. See also the separate opinion of Mr. Justice Brennan in Abbate v. United States, 1959, 359 U.S. 187, 196, 201, 79 S.Ct. 666, 674, 3 L.Ed.2d 729, that "not mere violence to, but virtual extinction of, the guarantee results if the Federal Government may try people over and over again for the same criminal conduct just because each trial is based on a different federal statute protecting a separate federal interest."

The District Court's decision to the contrary rested on what we deem an erroneous reading of Blockburger v. United States, 1932, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306. Blockburger was a case, not of repeated indictments, but of a single multiple count indictment. Blockburger, particularly as supplemented by Gore v. United States, 1958, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405, and Harris v. United States, 1959, 359 U.S. 19, 79 S.Ct. 560, 3 L.Ed.2d 597, shows that the defendants here could have been initially indicted for the single sale and given consecutive sentences under two counts, one for violation of 26 U.S.C. § 4705 and the other for violation of 21 U.S.C.A. §§ 173 and 174—not that they could first be indicted for one and, after conviction or acquittal, be tried again for the other. While confusion has been created by the citation of successive-indictment cases in opinions where the issue was only what charges could be joined in a multiple count indictment and *vice versa*, Mr. Justice Frankfurter's opinion in Gore v. United States, supra, 1958, particularly at pages 392–393 of 357 U.S., at page 1284 of 78 S.Ct., demonstrates the important distinction between the two categories. The situations differ both historically and practically. The constitutional guarantee against double jeopardy stems from the ancient pleas of *autrefois acquit* and *autrefois convict;* these could not be made by a defendant to a multiple count indictment who had

been neither acquitted nor convicted of any of the charges. And the far more serious practical consequence of trials on successive indictments for the same conduct are developed both in Gore and in Mr. Justice Brennan's separate opinion in Abbate, supra.

The Fifth Amendment guarantees that when the government has proceeded to judgment on a certain fact situation, there can be no further prosecution of that fact situation alone: The defendant may not later be tried again on that same fact situation, where no significant additional fact need be proved, even though he be charged under a different statute. He may not again be compelled to endure the ordeal of criminal prosecution and the stigma of conviction. These are the plain and well understood commands of the Fifth Amendment in forbidding double jeopardy. Here there was one sale of narcotics. The government should have but one opportunity to prosecute on that transaction. Although in such a prosecution it may join other charges based on the same fact situation, it may not have a succession of trials seriatim.

Judgment reversed.