**Jerry Lee JORDAN, Appellee,**

v.

**COMMONWEALTH OF VIRGINIA,
Appellant.**

**No. 78–6540.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 8, 1979.

Decided June 2, 1980.

Robert E. Bradenham, II, Asst. Atty. Gen., Richmond, Va. (Marshall Coleman, Atty. Gen. of Va., Richmond, Va., on brief), for appellant.

Lewis E. Goodman, Jr., Danville, Va., for appellee.

Before BUTZNER, PHILLIPS and MUR-NAGHAN, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

Jordan sought a writ of habeas corpus, alleging that his state court felony conviction for possession of a controlled narcotic substance after an earlier misdemeanor conviction for obtaining the same substance with a forged prescription violated his rights under the Double Jeopardy Clause. The district court found double jeopardy and issued the writ. We agree and affirm.

I

Jordan's two successive convictions grew out of his conduct over a period of a few minutes on May 6, 1976. On that date he entered a drug store in the Commonwealth of Virginia and obtained a quantity of the drug Eskatrol by presenting a forged prescription to the pharmacist. Alerted by the pharmacist, another drug store employee followed Jordan into a nearby parking lot and observed him there still in possession of the Eskatrol. Information of this conduct communicated to the authorities led to the issuance on May 10 of two warrants for Jordan's arrest. One charged him with the misdemeanor offense of obtaining a drug by presenting a forged prescription;[1] the

---

1. The warrant specifically charged that Jordan "did unlawfully obtain Eskatrol a controlled schedule II substance by presenting a forged prescription at Super X Drug Store in Ballou Center," in violation of Va.Code § 54–524.76. This statute, subsequently repealed and substantially recodified as a felony offense in Va.

Code § 18.2–258.1, then provided in pertinent part:

*Fraud, deceit, and forgery.*—(a) No person shall obtain or attempt to obtain any drug or procure or attempt to procure the administration of any drug: (1) by fraud, deceit, misrepresentation, or subterfuge; or (2) by

other with the felony offense of possession of a "controlled substance."[2] On July 26 Jordan was tried on a not guilty plea and convicted of the misdemeanor offense of obtaining the drug with a forged prescription,[3] and on the same day probable cause was found on the felony possession charge. On September 7 the grand jury returned a true bill on the felony possession charge, specifically identifying the possession as that observed in the parking lot on March 6.

At his trial on the felony charge on September 20, Jordan entered a plea of not guilty and raised the double jeopardy defense in bar of the prosecution. The jeopardy plea was heard with the case on the merits. The Commonwealth's case consisted of the testimony of the pharmacist, the employee who followed Jordan to the parking lot, and the officer who arrested Jordan under both warrants. The pharmacist testified to the transaction in which Jordan obtained the Eskatrol and identified the prescription, which was introduced in evidence. The other drug store employee testified that she followed Jordan into the parking lot and there saw the Eskatrol pills in his possession. The arresting officer read a statement made to him by Jordan admitting that he obtained the Eskatrol by using a forged prescription. The Commonwealth rested its case on this evidence. The double jeopardy plea was then argued and rejected, and Jordan was found guilty.

Following an unsuccessful appeal to the Supreme Court of Virginia on the double jeopardy claim, Jordan sought and obtained habeas relief in the district court, and this appeal by the Commonwealth resulted.

## II

The Commonwealth essentially bases its justification for the two prosecutions and convictions upon the "two offense" test of *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and particularly the application of that test in *Gore v. United States*, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958).[4] It contends that these decisions, rightly applied to the facts of this case, reveal that the multiple prosecutions of Jordan were not for the "same offense," and so did not violate the Double Jeopardy Clause. We disagree.

Where closely connected conduct gives rise to prosecution on multiple charges under separate statutes, the critical double jeopardy question is likely to be, as it is here, whether the charges are for the "same offense" within contemplation of the Clause. To resolve this question *Blockburger* provides an analytical test that can be dispositive:

[W]hen the same act or transaction constitutes a violation of two distinct statu-

---

the forgery or alteration of a prescription or of any written order; or (3) by the concealment of a material fact; or (4) by the use of a false name or the giving of a false address.

. . . . .

(f) No person shall make or utter any false or forged prescription or false or forged written order.

2. The indictment charged that Jordan "did unlawfully, feloniously and knowingly possess and have in his control Eskatrol, a schedule II controlled substance, at approximately 3 p. m. in Ballou Park Shopping Center," in violation of Va.Code § 18.2–250. This statute provides:

*Possession of controlled substances unlawful.*—It is unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of his professional practice, or

except as otherwise authorized by the Drug Control Act.

3. No transcript of this trial was included in the habeas record. We proceed on the assumption that the Commonwealth's proof followed the charge that Jordan obtained the specific drug Eskatrol by presenting a forged prescription on May 6. No suggestion is made that any other offense defined in the charging statute was proved.

4. Holding that on the basis of one sale of narcotics it was permissible in a single prosecution to convict the defendant of three separate statutory offenses: (1) sale of drugs not "in pursuance of a written order"; (2) sale of drugs not "in the original stamped package"; and (3) sale of drugs with knowledge that they had been illegally imported. *Cf. United States v. Sabella*, 272 F.2d 206 (2d Cir. 1959) (impermissible to prosecute *successively* for violations of (1) and (3)).

tory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

284 U.S. at 304, 52 S.Ct. at 182.

■ If this test is not satisfied, *i. e.*, if the offenses charged are revealed by it to be "only one," double jeopardy results from the prosecution of multiple charges whether they are joined in a single prosecution or are successively prosecuted. *Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). But the exact converse of this does not follow; multiple charges that satisfy the *Blockburger* test so that they may properly be joined in a single prosecution may nevertheless violate double jeopardy if prosecuted successively. For when successive prosecutions are involved, "[t]he *Blockburger* test is not the only standard for determining whether successive prosecutions impermissibly involve the same offense." *Id.* at 166 n.6, 97 S.Ct. at 2226.

In consequence, even if we accept the Commonwealth's contention that under a *Blockburger* analysis the two prosecutions of Jordan were for "two offenses," [5] that does not end the inquiry in this successive prosecution case. Accordingly, we pass the question whether a pure *Blockburger* analysis would reveal two offenses here,[6] and proceed to analysis under the more appropriate test for successive prosecutions.

■ The reason for application of a different test is plain and well-settled. Successive prosecutions implicate a component of double jeopardy protection not implicated in single prosecutions of joined charges such as those involved in *Blockburger* and *Gore* : the protection against re-trial itself.

In this component double jeopardy vindicates principles of finality and repose of former judgments and of fundamental fairness that simply are not involved in a joined charge prosecution. Basically it insures that having once "run the gauntlet" of criminal trial to judgment either of conviction or acquittal, a person shall not be required to run essentially the same gauntlet again. It protects not only against multiple punishments but against multiple trials for the same offense. *See United States v. Wilson,* 420 U.S. 332, 343–44, 95 S.Ct. 1013, 1021–22, 43 L.Ed.2d 232 (1975); *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199 (1957); *United States v. Oppenheimer,* 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916). Because an additional interest is at stake, the test for determining whether the "same offense" is involved in successive prosecutions is one more protective of criminal defendants than the relatively strict "two offense" test of *Blockburger* that is decisive against defendants when satisfied in single prosecutions. It is also a test with more practical flexibility than the technically precise *Blockburger* test, directing pragmatic inquiry to the question whether "the evidence required to warrant a conviction upon one of the [prosecutions] would have been sufficient to support a conviction upon the other," and finding the second prosecution barred if the same evidence would so serve. *In re Nielsen,* 131 U.S. 176, 188, 9 S.Ct. 672, 33 L.Ed. 118 (1889), *quoting Morey v. Commonwealth,* 108 Mass. 433, 434 (1871); *United States v. Sabella,* 272 F.2d 206 (2d Cir. 1959).

*Nielsen* and *Sabella* are especially instructive for application of this successive prosecutions test to the instant case. In

---

**5.** The contention is that the misdemeanor offense required proof of illegal obtainment (or attempt to obtain), a fact not required to establish the felony offense; while the felony offense required proof of possession of a "controlled substance," a fact not required to establish the misdemeanor offense.

**6.** This would present a very difficult analytical problem. Its answer would depend upon whether in applying *Blockburger*'s test the scope of required proof under the two charges

is considered to include matters of affirmative defense (legal obtainment of the controlled substance under the felony charge, *see* Va.Code § 18.2–263), and whether in applying the test to successive prosecutions one looks not alone to the factual elements of the offenses as defined in the two statutes, but to the elements as actually charged and proved in the multiple prosecutions. In view of our basis for decision, we need express no view on these thorny questions.

*Nielsen* a defendant was first convicted of the anti-polygamy statutory offense of unlawful cohabitation with more than one woman by proof that he lived with two women as his wives. In a second indictment under another statute he was charged as a married man with committing adultery with one of the women on the day after the period of illegal cohabitation expressly charged in the first indictment. Although the two statutory violations would presumably have satisfied a *Blockburger* "two offense" test [7] the Supreme Court held the second prosecution barred under the Double Jeopardy Clause because the evidence used to convict of the first offense would necessarily have convicted of the second, the second being simply one of the "incidents" of the first. 131 U.S. at 188, 9 S.Ct. at 676. *See* note 12 *infra.*

In *Sabella,* defendants were first convicted of selling a narcotic drug without having a prescribed order from the purchaser in violation of 26 U.S.C. § 4705, on proof that they sold a quantity of heroin to one Zirilli without such an order. They were later indicted for selling Zirilli the same quantity of heroin under 21 U.S.C. §§ 173 and 174, which made it unlawful to sell illegally imported heroin. In upholding their plea of double jeopardy in bar of the second prosecution, Judge Friendly rejected the *Blockburger* test as inapposite to the successive prosecution being challenged.[8] Instead he found dispositive in defendant's favor the fact that "the government could sustain the second indictment with the self-same evidence needed to prove the first." *Id.* at 210. This was so because where sale of the identical heroin to the identical purchaser was proved in both prosecutions, proof necessarily made in the first prosecution of

defendant's original possession of the drug prior to its sale would suffice to raise a statutory presumption of its illegal importation under the second indictment, thus rounding out prima facie proof of the government's case in each prosecution. As Judge Friendly explained, this sufficed to invoke the guarantee of the Double Jeopardy Clause that

> when the government has proceeded to judgment on a certain fact situation, there can be no further prosecution of that fact situation alone: The defendant may not later be tried on that same fact situation, where no significant additional fact need be proved, even though he be charged under a different statute. He may not again be compelled to endure the ordeal of criminal prosecution and the stigma of conviction. These are the plain and well understood commands of the [Double Jeopardy Clause]. Here there was one sale of narcotics. The government should have but one opportunity to prosecute on that transaction. Although in such a transaction it may join other charges based on the same fact situation, it may not have a succession of trials seriatim.

*Id.* at 212.

Analysis of the proof in the instant case similarly reveals that the evidence necessarily used by the government in prosecuting the earlier misdemeanor charge would totally have sufficed to sustain the later felony conviction. For when the government proved, as it must have in the misdemeanor prosecution, that Jordan had *obtained*[9] the specific drug Eskatrol, concededly a controlled substance under the felony statute, it had thereby established the essential elements of possession and controlled charac-

---

7. *See Brown v. Ohio,* 432 U.S. at 166 n.6, 97 S.Ct. at 2226.

8. It would presumably have revealed two offenses. The first prosecution required proof that no purchase order for the sale existed (or permitted proof of the existence of an order as a defense), a fact not germane to the second prosecution. The second prosecution required proof of illegal importation, a fact not germane to the first.

9. Although the Commonwealth might have charged and proved only an attempt in the first prosecution, it charged instead the actual "fact situation": a consummated purchase resulting in the defendant's obtaining physical possession of the subject drug. Whether proof that had actually stopped short of obtainment but established "attempt" would have created a different case need not concern us. The Commonwealth's suggestion that this possibility existed under the misdemeanor statute was apparently made in contemplation of a *Blockburger* analysis. Whether it would have any rele-

ter of drug requisite to conviction of the felony.[10] Furthermore, if it be material, the proof necessarily made in the misdemeanor prosecution that the drug was obtained by means of a forged prescription [11] would suffice to rebut any attempted proof by the defendant in the later felony prosecution that he had obtained it legally. *See* note 6 *supra*.

 It may be contended against this analysis that the actual possession charged in the felony prosecution was one subsequent in point of time to the possession necessarily proved to have occurred upon the instant of obtaining the drug in the first prosecution. To this there is a simple answer. Possession is by nature a continuing offense, *see In re Nielsen*, 131 U.S. at 185–86, 9 S.Ct. at 675,[12] and the possession specifically charged to Jordan in the felony prosecution indisputably commenced the few minutes earlier when the drug was obtained by him. While the Double Jeopardy Clause does not limit legislative power "to define crimes and fix punishments," *Brown v. Ohio*, 432 U.S. at 165, 97 S.Ct. at 2225, there is no indication here of any legislative intention to define the possessory offense charged to Jordan other than as a continuing one. And it is settled that double jeopardy protections may not be avoided by the simple expedient of exercising prosecutorial discretion to "divid[e] a single crime into a series of temporal or spatial units." *Id.* at 169, 97 S.Ct. at 2227.

 Hence on a proper view of the successive prosecutions here, the "fact situa-

tion," prosecuted in the misdemeanor trial included as an incident possession of the very drug that was the only "incident" of the felony offense. As was said in *Sabella*, "The defendant may not be later tried on that same fact situation, where no significant additional fact need be proved." [13] 272 F.2d at 212. Accordingly, here as in *Sabella* it can be said that although the Commonwealth could permissibly have joined the two charges based on this same fact situation, it chose not to do so [14] and having so chosen, "it may not have a succession of trials seriatim." *Id.*

*AFFIRMED.*

---

vance for that purpose also need not concern us in view of our basis for decision.

10. *See* note 2 *supra*.

11. *See* note 1 *supra*.

12. Holding that in successive prosecutions the government could not circumvent double jeopardy protections by charging a fixed period for the continuing offense of "cohabitation" and a specific date one day outside that period for the later prosecuted "incidental" offense of "adultery."

13. The "no significant additional fact" qualification suffices to distinguish the *Nielsen-Sabella* type case into which the instant case falls from those cases such as *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970),

where different victims of the "same" criminal conduct are involved in the successive prosecutions. The different victim identity is, on current doctrine, such "a significant additional fact" that permits successive prosecutions subject only to collateral estoppel consequences of prior acquittals. *But cf. id.* at 448–60, 90 S.Ct. at 1196–1203 (Brennan, J., concurring).

14. No possibly extenuating reasons for the successive prosecutions are suggested on the record. *Cf. Diaz v. United States*, 223 U.S. 442, 448–49, 32 S.Ct. 250, 251, 56 L.Ed. 500 (1912) (requisite facts not discovered); *see also Jeffers v. United States*, 432 U.S. 137, 152, 97 S.Ct. 2207, 2216, 53 L.Ed.2d 168 (1976) (separate trials requested by defendant).