Melvin W. MARTIN,
Petitioner–Appellant,

v.

J.B. TAYLOR, Acting Warden; Attorney
General of the State of Virginia,
Respondents–Appellees.

No. 87–7746.

United States Court of Appeals,
Fourth Circuit.

Argued June 10, 1988.
Decided Sept. 26, 1988.

Adam Lipton (Nancy L. Cook, American University Washington College of Law, Appellate Advocacy Program, Washington, D.C., on brief), for petitioner-appellant.

Hazel Elizabeth Shaffer, Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen., Richmond, Va., on brief), for respondents-appellees.

Before RUSSELL and MURNAGHAN, Circuit Judges, and NIEMEYER, United States District Judge for the District of Maryland, sitting by designation.

NIEMEYER, District Judge:

Melvin W. Martin was tried and convicted of the misdemeanor of vandalism in the General District Court for the City of Buena Vista, Virginia for breaking a glass door to the cashier's booth of a gas station on the night of July 23, 1984. Shortly thereafter he was tried and convicted of the felony of attempted breaking and entering with the intent to commit larceny in the Circuit Court for the City of Buena Vista for the entering of that booth. The same incident gave rise to the separate charges in the two courts. After exhausting state remedies, Martin filed a petition in the District Court below for a writ of habeas corpus under 28 U.S.C. § 2254 contending that he was twice put in jeopardy for the same offense. Concluding that the offenses were not the same for double jeopardy

purposes, the District Court denied his petition. We affirm.

## I

Well after midnight on the rainy evening of July 23, 1984, a witness, while riding in his automobile, observed a person pushing and pulling on the sliding glass window of a cashier's booth at a gas station in the City of Buena Vista, Virginia, which was closed for the night. The witness turned around and came back to the station, but he did not then see the person. Nevertheless, he drove to the police station and reported the incident.

When Officer Angus investigated the report, he observed someone dressed in blue jeans and a green parka kneeling in front of a glass door to the gas station booth, the bottom half of which was shattered, with his hand inside the door. The person had a stick and was making a "raking motion" toward the cigarette machine in the booth. When Officer Angus attempted to make an arrest, the person fled, jumped into a nearby creek, and disappeared into the bushes. Returning to the gas station, Officer Angus found fishing gear nearby, including a tackle box with a prescription bottle inside. Officer Angus knew the person whose name was on the prescription as a friend of defendant Martin's grandmother, and ordered a stakeout of her house. He also staked out the gas station.

One half hour later, defendant Martin came from the creek toward the station, sat where the tackle box had been, and was then arrested. At the time of arrest, Martin was wet and was wearing blue jeans and a green parka.

Martin was tried in the General District Court, convicted of the misdemeanor of vandalism for damaging the glass in the door, and sentenced to 60 days. The statute under which he was convicted, Va.Code Ann. § 18.2–137, provides in pertinent part:

> "If any person, unlawfully, but not feloniously, ... destroy, deface or injure any property, real or personal, not his own, ... he shall be guilty of a Class I misdemeanor."

A few months later Martin was tried in the Circuit Court for the felony of attempted breaking and entering with the intent to commit larceny. The underlying felony of breaking and entering is codified at Va. Code Ann. §§ 18.2–90 and 18.2–91, the pertinent parts of which provide:

> "§ 18.2–90
>
> If any person ... in the nighttime enters without breaking or at any time breaks and enters ... any office, shop, storehouse ... with intent to commit murder, rape or robbery, he shall be deemed guilty of statutory burglary, which offense shall be a Class 3 felony.

.  .  .  .  .

> § 18.2–91
>
> If any person does any of the acts mentioned in 18.2–90 with the intent to commit larceny, or any felony other than murder, rape or robbery, he shall be deemed guilty of statutory burglary."

At his trial Martin, testifying against the advice of his attorney, claimed that on the evening of his arrest he had drunk almost all of a fifth of Jack Daniel's whiskey, a twelve-pack of beer and a bottle of Mad Dog wine. He testified that he passed by the station where he stopped to urinate in the alley. When he wanted to light a cigarette, he had no matches and thought he could find some at the gas station. He claimed that because he was drunk he fell accidentally against the door and shattered the glass. He denied stealing anything. He was convicted in the Circuit Court and sentenced to two years.

## II

■ The Double Jeopardy Clause of the Fifth Amendment prohibits a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). Whether two offenses are the same for purposes of double jeopardy has been visited frequently by the Supreme Court since its seminal decision in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932),

in which it stated that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304, 52 S.Ct. at 182. In *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 1221, 53 L.Ed.2d 187 (1977), the Court recognized that the *Blockburger* test focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence presented at trial. Thus, a lesser included and a greater offense were held to be the same for double jeopardy purposes.

The *Blockburger* test is not the only one, however, for determining whether a second prosecution is barred by the Double Jeopardy Clause. For example, the principles of collateral estoppel are embodied in the Double Jeopardy Clause to prohibit successive prosecutions where the second prosecution requires the relitigation of factual issues already resolved favorably to the defendant by the first. *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). Moreover, this Court has noted that even the *Blockburger* test will not be applied formalistically, but will focus on the evidence in a spirit of vindicating the constitutional guarantee against retrial. *Jordan v. Commonwealth of Va.*, 653 F.2d 870 (4th Cir.1980).

In *Jordan* the defendant obtained the drug Eskatrol by presenting a forged prescription to a pharmacist. After having been tried for the misdemeanor of presenting a forged prescription, he was tried for the felony of possession of a "controlled substance." This Court held that the state could not conduct successive trials because "the evidence necessarily used by the government in prosecuting the earlier misdemeanor charge would totally have sufficed to sustain the later felony conviction." 653 F.2d at 874.

The need for flexibility in determining whether the same offense was the subject of successive trials is revealed yet more clearly in conspiracy cases. Since the same conspiracy may be established by different aggregations of proof, a focus on the overall conspiracy itself, or the "totality of the circumstances," becomes necessary. In this manner, an accused will not be subjected to separate prosecutions for the same conspiracy based on the selection of separate sets of overt acts for each indictment. *U.S. v. Ragins*, 840 F.2d 1184 (4th Cir. 1988).

Any thorough double jeopardy analysis must, therefore, consider not only the nature of the offenses charged and the proofs necessary to convict on the charges, but also the factual circumstances of the transaction giving rise to the successive criminal prosecutions.

■ In scrutinizing the evidence presented in successive trials for double jeopardy purposes, only the *material* evidence that was probative of conviction which was presented at the first trial should be measured against the evidence presented at the successive trial. That the State volunteers a greater proof at the first trial does not shield a subsequent trial which otherwise is not on the same offense. This discipline of analysis is indicated not only by *Blockburger*, but by the later Supreme Court opinions in *Brown v. Ohio, supra*, and *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), and is specifically recognized by this Court's decision in *Jordan*. As the Supreme Court observed in *Vitale*, "the mere possibility that the State will seek to rely on all of the ingredients necessarily included in the traffic offense to establish an element of [the first prosecution] would not be sufficient to bar the latter prosecution." *Illinois v. Vitale*, 447 U.S. 410, 419, 100 S.Ct. 2260, 2267, 65 L.Ed. 2d 228 (1980).

### III

■ Turning now to the trials of Martin, we note that there is no record of Martin's trial in the Buena Vista General District Court, and therefore we assume that the State's proof in the first trial followed the charge and that no other offense was proved or tried. See *Jordan, supra* at 872, n. 3. Since Martin was convicted only of vandalism, the proof necessarily presented

there must have shown that Martin shattered the glass in the lower one-half of the door to the cashier's booth at the gas station, and only that evidence is material to the double jeopardy analysis.

That proof, however, was not a necessary element in the charge of attempted breaking and entering with the intent to commit larceny which was tried in the second trial. An attempt crime requires specific intent to commit a crime and some overt act which tends toward but falls short of the consummation of the crime. The underlying statutory offense in this case—that of breaking and entering *at night* with the intent to commit larceny— requires no breaking, only an entering. Whether Martin, or someone else, shattered the glass is immaterial.

Martin could have been tried for the crime charged in the second case under several different aggregations of proof. For one, he admitted at trial the specific intent element of the crime of attempt when he stated that he wanted to steal a match, and that, coupled with his overt conduct in approaching the booth may have been enough. For other aggregations, he may have been seen pushing and pulling the sliding glass window to the cashier's booth, and at another time he may have been seen with his hand in the opening created by the shattered glass. Each version would have been probative of the offense of attempted breaking and entering. It *would not have been necessary to prove* that it was Martin who broke the glass. The matters of proof essential to prove the offense tried at the second trial do not include the proof necessary to establish the vandalism charged at the first trial. And the necessary proof of vandalism does not include the elements of the charge of attempted breaking and entering with the intent to commit larceny.

The Supreme Court in *Illinois v. Vitale, supra,* observed about its holding in the earlier ruling in *Brown v. Ohio, supra:*

> Had the State been able to prove auto theft, without also proving that the defendant took, operated, or kept the auto without consent of the owner—*if proof of the auto theft had not necessarily involved proof of joyriding*—the successive prosecutions would not have been for the "same offense" within the meaning of the Double Jeopardy Clause. 447 U.S. at 417, 100 S.Ct. at 2265. (Emphasis supplied.)

We conclude, therefore, that Martin was not tried successively for the same offense as that term is used in the Double Jeopardy Clause of the Fifth Amendment.

AFFIRMED.

MURNAGHAN, Circuit Judge, dissenting:

Focusing on "what might have been," the majority condones the successive prosecutions of Melvin Martin because Martin "could have been tried for the crime charged in the second case under several different aggregations of proof." At 960. It is established, however, that "what might have been" is not the correct test for evaluating successive prosecutions under the Double Jeopardy Clause of the Fifth Amendment to the Constitution. The proper test is "what was": we must examine the evidence actually used to prosecute the defendant in the successive trials. Here, the Commonwealth of Virginia has admitted that it relied on the same evidence, the breaking of the glass door, to convict Martin in both trials. The use of successive prosecutions here thus violates the constitutional guarantee "that an accused who has once stood the ordeal of criminal prosecution through to judgment—whether of conviction or acquittal—shall not be required to 'run the gauntlet' of trial again for the same alleged misconduct." *United States v. Ragins,* 840 F.2d 1184, 1188 (4th Cir.1988) (citing *Green v. United States,* 355 U.S. 184, 187–90, 78 S.Ct. 221, 223–25, 2 L.Ed.2d 199 (1957)). I therefore respectfully dissent.

I agree with the majority that the successive prosecutions do not violate the strict "two offense" test articulated by the Supreme Court in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). In *Blockburger,* the Court ruled:

[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Id.* at 304, 52 S.Ct. at 182. Here, the vandalism misdemeanor required proof of damage to property, an element not required by the felony charge; the felony, attempted breaking and entering, required proof of specific intent to commit larceny, an element not required by the vandalism charge.

In *Jordan v. Commonwealth of Virginia,* 653 F.2d 870 (4th Cir.1980), however, we held that successive prosecutions may violate the Double Jeopardy Clause even when the simple *Blockburger* test for identifying different crimes is satisfied, if the successive prosecutions are, in fact, brought for the same offense: "Successive prosecutions implicate a component of double jeopardy protection not implicated in single prosecutions of joined charges such as those involved in *Blockburger* ...: the protection against retrial itself." *Id.* at 873. In *Jordan,* we described the "same offense" test for successive prosecutions as involving

> the question whether "the evidence required to warrant a conviction upon one of the [prosecutions] would have been sufficient to support a conviction upon the other," and finding the second prosecution barred if the same evidence would so serve.

*Id.* (quoting *In re Nielsen,* 131 U.S. 176, 188, 9 S.Ct. 672, 676, 33 L.Ed. 118 (1889)). We reaffirmed the *Jordan* approach in *United States v. Ragins,* 840 F.2d 1184 (4th Cir.1988):

> Given the multiplicity of offenses that may arise from a single criminal transaction, the formalistic *Blockburger* test, with its narrow focus on the technical elements of the offenses charged, is inadequate to vindicate this constitutional guarantee against retrial. The general test for determining whether successive prosecutions involve the "same offense"

is therefore a more flexible and pragmatic one, which focuses not on the formal elements of the two offenses but rather on the proof actually utilized to establish them. Under this "same evidence" test, the second prosecution is barred by double jeopardy if the evidence actually used to prosecute the first offense would suffice to convict of the second offense as charged. *Jordan,* 653 F.2d at 873–74; *see In re Nielsen,* 131 U.S. 176, 188, 9 S.Ct. 672, 676, 33 L.Ed. 118 (1889), quoting *Morey v. Commonwealth,* 108 Mass. 433, 434 (1871); *United States v. Sabella,* 272 F.2d 206, 211 (2d Cir.1959).

*Id.* at 1188.

In its Brief, the Commonwealth of Virginia asks this court to reconsider the reasoning behind the *Jordan* decision: "The Commonwealth is thus asking this Court to reconsider the reasoning behind its ruling in *Jordan,* which was, in effect, gratuitous, and to hold instead that successive prosecutions occur for double jeopardy purposes only when the offenses involved are continuing." Appellee's Brief at 8–9. First, of course, this panel does not have the power to change Fourth Circuit precedent. Second, even if the *Jordan* reasoning could be treated as mere *dictum,* I do not find Virginia's argument compelling. Virginia argues that the key factor behind *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed. 2d 187 (1977), was the "continuing nature" of the offense:

> Critical to both *Brown* and *Jordan* was the respective courts' determinations that the offenses involved (joyriding and auto theft in *Brown:* obtaining a drug by deceit and possession of that drug in *Jordan* ) were continuing ones. It was for *this* reason that the *Brown* court concluded that the two crimes were really one, and that further prosecution was barred. And it is for *this* reason that further prosecution should have been barred in *Jordan.*

Appellee's Brief at 8. That interpretation is incorrect. In *Brown,* the Supreme Court held that successive prosecutions for joyriding (a misdemeanor) and auto theft (a felony) were barred by double jeopardy because joyriding is a lesser included offense

of auto theft. In *Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985), the Supreme Court described *Brown* as follows:

The defendant in *Brown* had stolen an automobile and driven it for several days. He had engaged in a single course of conduct—driving a stolen car. The very same conduct would support a misdemeanor prosecution for joyriding or a felony prosecution for auto theft, depending only on the defendant's state of mind while he engaged in the conduct in question. Every moment of his conduct was as relevant to the joyriding charge as it was to the auto theft charge.

*Id.* at 787, 105 S.Ct. at 2416. In *Garrett,* the Supreme Court expressly distinguished *Brown* as merely involving successive prosecutions for a lesser included offense and a greater offense. *See id.* at 787, 789, 105 S.Ct. at 2415, 2416; *see also Illinois v. Vitale,* 447 U.S. 410, 417, 100 S.Ct. 2260, 2265, 65 L.Ed.2d 228 (1980) ("our holding in *Brown v. Ohio* ... that a conviction for a lesser-included offense precludes later prosecution for the greater offense"). The underlying problem with the Commonwealth's argument is that it uses "lesser included offense" and "continuing offense" interchangeably. In fact, neither *Brown* nor *Jordan* nor the present case involve "continuing" offenses. In view of this Court's clear statements in *Jordan* and *Ragins* adopting the "same evidence" test to determine whether successive prosecutions are for the same offense and violate double jeopardy, I see no basis for Virginia's suggestion that we limit *Jordan* to cover only "continuing" offenses.

Here, Virginia violated *Jordan* by using the same evidence in both prosecutions. The breaking and entering element in the second trial was proved with evidence that Martin smashed the glass door—the same evidence used to convict Martin on the vandalism misdemeanor in the first trial. Virginia argues that the evidence of breaking the glass door was not needed to prove the breaking and entering charge, because testimony was presented at the second trial that Martin was seen pulling and pushing on the cashier's window. It is true that under Virginia law, proving the pushing and pulling would have been sufficient to prove attempted breaking and entering, with which Martin was charged in the second prosecution. The Commonwealth admits, however, that it did not in fact *rely* on the pushing and pulling evidence in the second trial, and that it relied instead on evidence that Martin had smashed the door and was seen reaching in the door with a stick. That the focus in the second trial was entirely on the broken door is borne out by the opening and closing statements made by counsel at trial. The second prosecution thus runs afoul of the "proof actually utilized" test articulated in *Ragins.*

Virginia contends that "[t]he fact that this theory [the window evidence] was not relied on below is of no significance," because "[t]he appellee, as the prevailing party, may rely on any ground in support of the trial court's ruling, 'whether or not that ground was relied upon or even considered by the court below.'" Appellee's Brief at 12 (quoting *United States v. Arthur Young & Co.,* 465 U.S. 805, 814 n. 12, 104 S.Ct. 1495, 1501 n. 12, 79 L.Ed.2d 826 (1984)). The Commonwealth's reliance is misplaced. The rule articulated in *Arthur Young* and in *Dandridge v. Williams,* 397 U.S. 471, 475 n. 6, 90 S.Ct. 1153, 1156 n. 6, 25 L.Ed.2d 491 (1970), deals only with the situation where a lower court's decision is sustainable on appeal on grounds different from those articulated by the lower court. The rule does not apply here, where the inquiry properly focuses on "the proof actually utilized" (*Ragins,* 840 F.2d at 1188) below to establish the two offenses for which the defendant was successively prosecuted.

The majority acknowledges the relevance of *Jordan* and *Ragins* but suggests that the second prosecution of Martin is permitted by *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). In *Vitale,* the Supreme Court held that a prior conviction of a driver for failing to reduce speed to avoid automobile accident would bar, on double jeopardy grounds, a subsequent prosecution for involuntary manslaughter *if* "as a matter of Illinois law, a

careless failure to slow is always a necessary element of manslaughter by automobile," *id.* at 419, 100 S.Ct. at 2267, *or* "if in the pending manslaughter prosecution Illinois relies on and proves a failure to slow to avoid an accident as the reckless act necessary to prove manslaughter." *Id.* at 421, 100 S.Ct. at 2267. The Court stressed the risk inherent in the possibility that the state would use the same evidence, of failure to slow, in the second prosecution:

> In any event, it may be that to sustain its manslaughter case the State may find it necessary to prove a failure to slow or to rely on conduct necessarily involving such failure; it may concede as much prior to trial. In that case, because Vitale has already been convicted for conduct that is a necessary element of the more serious crime for which he has been charged, his claim of double jeopardy would be substantial under *Brown* and our later decision in *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977).

*Id.* at 420, 100 S.Ct. at 2267. The state had argued that other reckless acts, such as disobeying a crossing guard and failure to maintain brakes, *could* be used to prove the manslaughter charge. *Id.* at 418 & n. 7, 100 S.Ct. at 2266 & n. 7. The Supreme Court remanded the *Vitale* case for a determination of whether proving failure to slow was necessary as a matter of statute *and* whether the state in fact would rely again on the defendant's failure to slow or would instead rely on other reckless acts to prove the manslaughter charge at the second trial. *Id.* at 421, 100 S.Ct. at 2267.

The majority concludes that *Vitale* permits the successive prosecutions of Martin because

> Martin *could* have been tried for the crime charged in the second case under several different aggregations of proof.... his overt conduct in approaching the booth *may* have been enough.... he *may* have been seen pushing and pulling the sliding glass window to the cash-

ier's booth, and at another time he *may* have been seen with his hand in the opening created by the shattered glass. Each version *would have been* probative of the offense of attempted breaking and entering.

At 96 (emphasis supplied). But here, unlike in *Vitale,* we have already had the second trial. At the second trial, Virginia *relied* on the same evidence, relating to the broken glass door, that was used to secure Martin's conviction in the first prosecution.

A small amount of evidence was indeed presented indicating that Martin had been seen pulling at the window before he smashed the door. However, had the window evidence been the only evidence permitted, Martin might well have been acquitted because the witness could not identify the man he saw pushing at the window. The evidence about the smashed glass door was thus *necessary* to prove the attempted breaking and entering charge at the second trial. The Supreme Court has used the words "necessary" and "necessarily" repeatedly in this connection. *See, e.g., Vitale,* 447 U.S. at 419, 420, 421, 100 S.Ct. at 2266, 2267, 2267. In *Jordan,* we looked to "the evidence *required* to warrant a conviction." 653 F.2d at 873 (emphasis supplied). Because only a wisp of evidence was presented to the jury about a man (possibly, but not necessarily, Martin) being observed by a passerby pushing and pulling at the cashier's window, here it is abundantly clear that in the second prosecution Virginia in fact necessarily relied a second time on the broken door evidence to obtain a conviction for attempted breaking and entering.[1]

It was therefore improper for the Commonwealth to run Martin through the gauntlet twice. It may be, as the majority suggests, that a second conviction could have been obtained without reliance on the same evidence used to convict Martin at his first trial. But because the second trial

---

**1.** The only additional element actually proved in the second prosecution was specific intent to commit larceny. As in *Brown,* the difference was the defendant's state of mind while he en-

gaged in the conduct in question. *See Garrett,* 471 U.S. at 787, 105 S.Ct. at 2415, quoted *supra* at 963.

has already been held, the relevant inquiry for us is 'what was,' not 'what might have been.' It is abundantly clear, as Virginia concedes, that the same evidence was used in both trials. It is also clear that the same evidence was necessary to obtain a conviction at the second trial, as the evidence presented would otherwise have been insufficient to convict the defendant. Following the controlling precedent of *Jordan* and *Ragins*, it is clear to me that the successive prosecutions of Martin violate the Double Jeopardy Clause. I therefore dissent.