THE STATE OF OHIO, APPELLEE, *v.* EARICH, APPELLANT.

(No. 80-C-53—Decided February 26, 1982.)

*Mr. David Tobin,* prosecuting attorney, for appellee.

*Mr. Robert L. Guehl,* for appellant.

O'NEILL, J. Michael Earich, defendant-appellant, was indicted on July 10, 1979 for gross sexual imposition under R.C. 2907.05(A)(1), a felony of the fourth degree and attempted rape under R.C. 2923.02(A), a felony of the second degree.

On April 25, 1980, the appellant was returned to Columbiana County from Florida for trial in this indictment.

He was arraigned on April 28, 1980, and the Columbiana County Public Defender's Office was appointed to represent him.

The public defender's office filed a motion to have bond reduced which was denied on May 9, 1980.

The state of Ohio subsequently filed a motion to consolidate for trial the indictment in this case with the indictment in case No. 79 CR 89, an indictment for rape. On May 30, 1980, the court denied the state's motion.

The case came for trial on September 15 and 16, 1980, and a jury found the appellant guilty of both counts of the indictment as charged.

On September 18, 1980, the appellant was sentenced to the Ohio State Penitentiary for a term of six months to five years on count one of the indictment and a term of two years to fifteen years on count two of the indictment, both counts to run concurrently with each other but consecutively with the sentence received in case No. 79 CR 89. On the same day the appellant's counsel filed a motion for new trial and judgment of acquittal.

The motion for new trial and judgment of acquittal was denied on September 23, 1980.

On October 17, 1980, a notice of appeal was filed on the appellant's behalf.

In a very brief manner, the appellant for his first assignment of error states that he cannot be convicted of both gross sexual imposition (R.C. 2907.05[A][1]) and attempted rape (R.C. 2923.02[A]). Without much law or argument, he concludes that under the evidence, he should only have been convicted of gross sexual imposition as a matter of law. Apparently, appellant wishes us to review his two sentences and conclude that they amount to multiple punishment for the same offense.

R.C. 2907.05, in pertinent part, states:

"(A)  No person shall have sexual contact with another, not the spouse of the offender, * * * when any of the following apply:

"(1)  The offender purposely compels the other person * * * to submit by force or threat of force."

As to attempted rape, we must consider two statutes as they apply to this case. "Rape" is defined by R.C. 2907.02 as follows:

"(A)  No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:

"(1)  The offender purposely compels the other person to submit by force or threat of force."

"Attempt" is defined in R.C. 2923.02(A) as follows:

"No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct which, if successful, would constitute or result in the offense."

Duplicitous offenses have been addressed by the Supreme Court of Ohio in the case of State v. Best (1975), 42 Ohio St. 2d 530 [71 O.O.2d 517], in paragraph three of the syllabus, as follows:

"The applicable rule under the Fifth Amendment is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not. A single act may be an offense against two statutes, and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other. (Blockburger v. United States, 284 U.S. 299, and Duvall v. State, 111 Ohio St. 657, followed.)"

When one reads the evidence in this case it can be concluded that there were acts of gross sexual imposition, all prior to, but leading up to an unsuccessful attempt at intercourse. These acts of gross sexual imposition were all a part of the attempted rape, thus they were "the same act or transaction constitut[ing] a violation of two distinct statutory provisions." State v. Best, supra. The elements of gross sexual imposition as set forth in R.C. 2907.05(A)(1) and the elements of rape as proscribed in R.C. 2907.02(A)(1) are similar. In proving attempted rape, the prosecution of necessity must prove all of the elements of gross sexual imposition. The evidence of all of defendant's acts prior to the attempted rape leads one to the conclusion that the acts of gross sexual imposition were incidental to the crime of attempted rape. R.C. 2941.25 states:

"(A)  Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B)  Where the defendant's conduct constitutes two or more offenses of

dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

Both offenses with which the appellant was charged were committed for the same purpose. Appellant could "be punished multiply only if" both crimes "were committed separately or with a separate animus as to each." *State* v. *Price* (1979), 60 Ohio St. 2d 136 [14 O.O.3d 379]. The appellant was sentenced on the charge of gross sexual imposition to a term of not less than six months or more than five years. This sentence is vacated.

Ray Manning was called as a defense witness. At the close of his testimony, the following dialogue occurred:

"THE COURT: That's all. Did you have something that you want to say to me, sir.

"MR. MANNING: Me?

"THE COURT: You walk by my Bench and make that look at me. Say it out loud.

"MR. MANNING: I just glanced over at you.

"THE COURT: Oh, now, Mr. Manning, get out. I don't have to put up with that sort of conduct from any witness in this courtroom from anybody, Mr. Guehl. Go ahead. Call your next witness.

"MR. GUEHL: Your Honor, we call Mitch Wolfe."

A short time later, out of the presence of the jury, the appellant moved for a mistrial. The judge overruled the motion but explained the occurrence as follows:

"THE COURT: All right, I want the record to show that as witness Manning came off the witness stand, he turned and looked at the Court and made a motion with his mouth, not vocally, 'BS, bull shit' and that's what I took it to mean. He did not vocally say it, but that's what he looked at me and said. I clearly understood from the movements of his mouth that he meant precisely that. And that's why I said what I said on the record. I don't have to take that, and I don't think that you expect me to, Mr. Guehl.

"MR. GUEHL: Your Honor, I can't—

"THE COURT: Well, of course, you don't have to tell me anything about Ray Manning.

"MR. GUEHL: I would however for the record like to move for a mistrial based on the action of the witness.

"THE COURT: Overruled.

"MR. TOBIN: Your Honor, I would request, so the record is clear that the Court in the morning perhaps issue the standard jury instruction concerning the Court's viewing of witnesses [*sic*] testimony or something. Perhaps that would be a good time to give a prophylactic discussion to the jury, or instructions to the jury so they don't interpret your talking to Mr. Manning as an indication of your view on the evidence.

"THE COURT: Yes.

"MR. TOBIN: I think it would be proper—

"THE COURT: I agree, and I will do precisely that the first thing in the morning.

"MR. TOBIN: Thank you, Your Honor.

"THE COURT: Unless you have some objection to that.

"MR. GUEHL: No, I have no objection to that.

"THE COURT: All right, see you in the morning."

He then gave the jury what we consider to be a curative instruction, if such was needed.

"THE COURT: All right, before we call any more witnesses, I should like to explain — not explain but give some instructions with reference to an exchange between myself and a witness by the name of Manning yesterday afternoon. As you can see by the design of the Court-

room, we all three sit at different levels. The Jury sits at one level; the Court at another, and counsel and the parties at another level. The reason for that is that we have different areas of responsibility. I have the duty of correctly stating the law. You are the sole determiners of the fact. I not only have a duty to correctly state the law, but to see that the trial is conducted in accordance with the rules, and that includes the conduct of witnesses, of jurors, of attorneys and their clients in the Courtroom, in accordance with those rules that are prescribed by the Supreme Court. I don't want you to misunderstand that exchange yesterday afternoon. You are instructed that whatever you heard, and I'm sure you heard all of the exchange — my voice is not hard to hear — I don't apologize for what I did at all. I have a duty to see that those rules are complied with. However, you are instructed that that exchange should not influence your decisions as far as the facts in the case are concerned. You are the fact finders. You are to consider witness Manning's testimony under the same guidelines as you consider any other witness on either the State's side or defense side, in accordance with the guidelines which I will give you at the end of the case. My point is that that exchange should not influence your decision so far as the guilt or innocence of this Defendant is concerned. Now, you will determine in your own judgment the credibility of Mr. Manning's testimony the same as every other witness in accordance with the guidelines. All right, you may call your next witness.

"MR. NARAGON: Thank you, Your Honor. Call Carol Earich."

The appellant was not entitled to a mistrial and this second assignment of error arguing that the denial of such was error is overruled.

The third assignment of error is based upon "the errors of law committed" in another case wherein defendant was convicted of another rape. We concern ourselves only with the case at hand.

The fourth assignment of error complains about the prosecutor's closing argument. There were three instances where an objection was made. During his presentation, the appellant's counsel argued to the jury that they should accept his version of consented intercourse on the part of the victim. The prosecutor stated:

"I don't believe that's credible. If you want to, that's up to you."

"He wants you to believe that she has gone through all of this merely because she was spurned by that excuse for a human being."

"I don't believe Ray Manning's testimony."

None of these remarks constituted an invitation to the jury to go beyond the evidence presented at trial. In any criminal case where the defendant raises a complete defense and denial of the state's case, the crucial issue is the credibility of the witnesses. In such a circumstance, it would be unreasonable to argue that the jury should presume that the prosecutor believed all of the defense testimony and was then prejudiced when the prosecutor stated that he did not believe all of the defense testimony. This appellant had a fair trial and was convicted upon sufficient weight of evidence.

The sentence of the court upon the charge of gross sexual imposition is vacated. The sentence imposed for attempted rape is affirmed.

*Judgment accordingly.*

LYNCH, P.J., and DONOFRIO, J., concur.