**UNITED STATES, Appellee,**

v.

**Thomas A. FAULHABER,**
**Defendant, Appellant.**

**No. 89–1826.**

United States Court of Appeals,
First Circuit.

Heard Nov. 6, 1990.

Decided March 27, 1991.

William G. Small, Woburn, Mass. (court-appointed), for defendant, appellant.

Martin F. Murphy, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before BREYER, Chief Judge, BROWN,* Senior Circuit Judge, and SELYA, Circuit Judge.

JOHN R. BROWN, Senior Circuit Judge:

Thomas Faulhaber appeals his conviction on eight counts of securities fraud, 15 U.S.C. §§ 78j(b), 78ff, 17 C.F.R. 240.10b-5(a), four counts of bank fraud, 18 U.S.C. § 1344, and one count of mail fraud, 18 U.S.C. § 1341. In particular, Faulhaber contends (i) the trial court improperly instructed the jury; (ii) the government impermissibly deviated its trial strategy from the indictment; and (iii) the indictment it-

* Of the Fifth Circuit, sitting by designation.

self was multiplicitous. Finding no error, we affirm.

*The Case of the Disappearing Nines*

Faulhaber held various mutual fund accounts in three different brokerage houses. Between August 1986 and September 1987, he purchased additional shares in these accounts by means of nine checks, which turned out to be altered. When the brokerage houses received the checks, the amount in figures, or courtesy amount, appearing on each check differed from the amount appearing in words on the check. The courtesy amount was greater at this point than the amount in words because Faulhaber would affix the number "9" to the "courtesy window" of the check in a manner that escaped ready detection. He accomplished this by typing the "9" onto a small scrap of paper, moistening the scrap, and placing it on the check. Faulhaber would then apply pressure to bond it temporarily to the check. The following chart provides a list of the altered checks which formed the basis of the indictment, and the corresponding indictment count numbers:

| Count Nos. | Amount in Words | Amount in Figures |
|---|---|---|
| 1, 10 | $ 510.00 | $ 9,510.00 |
| 2, 14 | $ 1,385.00 | $ 19,385.00 |
| 3, 15 | $ 1,875.00 | $ 91,875.00 |
| 4, 16 | $ 1,025.00 | $ 91,025.00 |
| 5, 11 | $ 1,775.00 | $ 91,775.00 |
| 6, 12 | $ 1,875.00 | $ 91,875.00 |
| 7, 17 | $ 1,375.00 | $ 91,375.00 |
| 8, 13 | $ 1,785.00 | $ 91,785.00 |
| 9, 18 | $ 1,885.00 | $ 91,885.00 |

While in transit through the Federal Reserve check processing system, the "9" would fall off the check. As a result of this scheme, Faulhaber's mutual fund accounts received credit for $9,000 (counts 1, 10), $18,000 (counts 2, 14), or $90,000 (counts 3–9, 11–13, 14–18) more than the amount in words indicated. When the checks arrived at the drawee institutions, the affixed numerals having fallen off, the institutions would debit Faulhaber's ac-

count for the lower amounts. Faulhaber would thus realize net benefits of as much as $90,000 with each passed check. Shortly after making a mutual fund deposit with one or more of the altered checks, Faulhaber would notify the brokerage house by letter requesting that it liquidate his account and remit the balance to him.

### The Well Laid Scheme is Waylaid

Whether from too little moisture or too much evaporation, this scheme brought itself to an end when alert persons in the check receiving and paying process discovered a discrepancy in one of Faulhaber's checks and the premature disappearance of the fateful "9". First, in February 1987, the depository bank of Fidelity Investments of Boston (Fidelity), with which Faulhaber had a mutual fund account, alerted Fidelity that the courtesy amount on one of Faulhaber's checks was different from the amount typewritten in words. In this instance, Fidelity corrected the amount credited to Faulhaber's mutual fund account. Later, in June 1987, First National Bank of Chicago received for processing another of Faulhaber's two-amount checks, this one to pay for shares in the mutual fund First Trust Tax Free Fund. At first glance, the amount in figures on the check appeared to be $91,875.00. Upon further examination, a First National clerk noticed that the "9" was coming off the check. The bank removed the "9" from the check with tape and turned the evidence over to the FBI. By September 1987, when Fidelity received yet another of Faulhaber's inconsistent checks, its investigations department had restricted Faulhaber's mutual fund account.

All this sleuthing, and the ultimate debiting of the correct dollar amount, was of no avail, as Faulhaber received the proceeds from the sale of the mutual fund shares for which he did not pay. The FBI investigation, however, finally led to the return of a multiple-count indictment against Faulhaber, which included charges of securities fraud (counts 1–9), mail fraud (counts 10–13), and bank fraud (counts 14–18). The jury convicted Faulhaber on eight securities fraud counts, four bank fraud counts, and one mail fraud count.

### 5 out of 9

Faulhaber bases his appeal on five grounds: (i) the trial court erred in improperly instructing the jury; (ii) the government failed to put on sufficient evidence to sustain the conviction on the securities fraud charges; (iii) certain counts in the indictment upon which Faulhaber was convicted are void as multiplicitous; (iv) consequently Faulhaber received more than one conviction for the same offense; and (v) the government impermissibly varied its trial strategy and presentation of evidence from the charges as stated in the indictment.

### The Jury Instructions

#### (i) Materiality

█ Faulhaber asserts that the trial court erred in failing to instruct the jury on materiality regarding the bank and mail fraud counts. He contends that the jury should have received an instruction that it was required to find that Faulhaber's scheme would have to defraud a person of "ordinary prudence and comprehension." We disagree. In *United States v. Brien*, 617 F.2d 299, (1st Cir.), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273 (1980), this court rejected the application of the "ordinary prudence and comprehension" standard in criminal fraud cases. We concluded that in criminal, unlike tortious, fraud, "[t]he only issue is whether there is a plan, scheme or artifice intended to defraud." *Id.* at 311. *Accord United States v. Maxwell*, 920 F.2d 1028, 1036 (D.C.Cir. 1990); *cf. United States v. Moore*, 923 F.2d 910, 914 (1st Cir.1991) (applying same standard to embezzlement). Here, the trial court's instruction complied with *Brien*, and the court therefore properly rejected Faulhaber's requested instruction on materiality.

#### (ii) Intent

█ For the first time on appeal, Faulhaber argues that the trial court's intent instruction was erroneous. He contends that the instruction did not adequately define

the level of intent necessary to sustain a securities fraud conviction. Faulhaber's grievance does not survive scrutiny under the plain error standard applicable to unpreserved errors, *see* Fed.R.Crim.P. 52(b); Fed.R.Evid. 103(d); *see also Moore*, 923 F.2d at 915; *United States v. Geer*, 923 F.2d 892, 896 (1st Cir.1991), first because the trial court's instructions on intent were virtually identical to those Faulhaber requested, with no argumentative support that the differences presented a substantial defect. Moreover, the court's definition of "willfully" comports with that which this Court set forth in *United States v. Bank of New England, N.A.*, 821 F.2d 844, 855–56 (1st Cir.), *cert. denied*, 484 U.S. 943, 108 S.Ct. 328, 98 L.Ed.2d 356 (1987). Since Faulhaber has not shown how this instruction conceivably could have undermined "the fundamental fairness of the trial," *see United States v. Vest*, 842 F.2d 1319, 1326 (1st Cir.1988), we conclude that his present objection to the court's intent instruction is totally without merit.

### Mutual Fund a Security

■ Faulhaber next argues that the evidence was not sufficient to justify the securities fraud conviction. Specifically, he contends that the court's failure to consider whether mutual funds are securities pursuant to 15 U.S.C. § 78c(a)(1) constitutes reversible error. Again we disagree. Although the Supreme Court has not confronted this precise issue, it emphasized in impressive dicta that mutual fund shares are securities. *See Tcherepnin v. Knight*, 389 U.S. 332, 343, 88 S.Ct. 548, 557, 19 L.Ed.2d 564, 573 (1967). The *Tcherepnin* Court reasoned that Congress "did not intend to adopt a narrow or restrictive concept of security in defining that term," choosing instead to focus on the economic realities. *Id.* at 338, 88 S.Ct. at 554, 19 L.Ed.2d at 570. Without a doubt a share in a mutual fund has the significant character of a security and with this our legal imprimatur is more than adequate.

### Multiplicity

■ Faulhaber advances the far-fetched claim that the three sets of counts in the indictment—securities fraud, mail fraud, and bank fraud—are void as multiplicitous, as the various counts are based on a single fact pattern for which Faulhaber received multiple sentences. As to the single bank fraud conviction, Faulhaber failed to raise it below. *See United States v. Rodriguez*, 858 F.2d 809, 816–17 (1st Cir.1988) (defendant forfeits multiplicity claim by not raising it at trial). The oft-quoted standard inquiry "whether each provision requires proof of a fact which the other one does not" governs Faulhaber's unsound contention that the securities fraud and mail fraud charges are multiplicitous. *See United States v. Serino*, 835 F.2d 924, 930 (1st Cir.1987) (quoting *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932)). *See also Grady v. Corbin*, 495 U.S. ——, —— n. 8, 110 S.Ct. 2084, 2091 n. 8, 109 L.Ed.2d 548, 561–62 n. 8 (1990) (acknowledging the continued vitality of the *Blockburger* test as it applies to the situation of possible multiple sentences); *United States v. Maldonado-Rivera*, 922 F.2d 934, 981 (2d Cir. 1990) (relying on *Grady* in applying the *Blockburger* test to a case of multiple punishments); *United States v. Ortiz-Alarcon*, 917 F.2d 651, 653–54 (1st Cir.1990) (similar). The Second Circuit has specifically found that the mail fraud and securities fraud counts stand independently of one another. *See United States v. Reed*, 639 F.2d 896, 905 (2d Cir.1981). Specifically, the securities fraud statute requires fraud in connection with the purchase or sale of securities, while the mail fraud statute does not have this requirement. *See* 17 C.F.R. 240.10b–5(a); 18 U.S.C. § 1341. Furthermore, the mail fraud offense requires proof of use of the mails while the securities fraud statute requires either use of the mails or use of any facility of interstate commerce. *Id.* Considering these differences, it is clear that the indictment is not multiplicitous.

### Variance From the Indictment at Trial

■ Finally, Faulhaber contends that the government's trial strategy and presentation of evidence impermissibly varied from

the charges as stated in the indictment. His convoluted argument relies on *Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), and suggests that the government did not prove that Faulhaber committed the fraud with regard to the specific securities funds named in the indictment. In *Stirone,* the Supreme Court held that an indictment charging interference with the interstate importation of *sand,* while proving importation of *steel,* was a fatal variance requiring dismissal of the conviction. *Id.* at 218, 80 S.Ct. at 274, 4 L.Ed.2d at 257. Here, Faulhaber claims that the government presented proof of his fraud on victims other than those stated in the indictment. At trial, the government presented evidence regarding the specifically named mutual fund accounts that Faulhaber used or attempted to use in his scheme to defraud. On this record, there is no variance, substantial or otherwise, between indictment charges and evidence presented which could have so affected Faulhaber's substantial rights. *See United States v. Doherty,* 867 F.2d 47, 64 (1st Cir.), *cert. denied,* 492 U.S. 918, 109 S.Ct. 3243, 106 L.Ed.2d 590 (1989).

### End of the 9's

The trial court committed no error in its instructions to the jury, or in its rulings that the indictment was not multiplicitous. Further, there was no unacceptable variance between the charges and evidence presented. Accordingly, we hold that Faulhaber's conviction was correct in all respects.[1]

*Affirmed.*

---

**1.** All of the other arguments raised in counsel's brief and in appellant's supplemental *pro se* brief are meritless; none require comment.