**UNITED STATES of America, Appellant,**

v.

**Luis A. COLON–OSORIO, Appellee.**

No. 93–1373.

United States Court of Appeals, First Circuit.

Heard Sept. 8, 1993.

Decided Nov. 30, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Jan. 6, 1994.

Kathleen A. Felton, Atty., Dept. of Justice, with whom Daniel F. Lopez–Romo, U.S. Atty., and Miguel A. Pereira, Asst. U.S. Atty., were on brief for appellant.

Linda Backiel, for appellee.

Before SELYA, Circuit Judge, ALDRICH and COFFIN, Senior Circuit Judges.

COFFIN, Senior Circuit Judge.

On December 9, 1992, Luis Colon–Osorio was convicted of two counts of failure to appear as ordered before a court in Connecticut. A month later, on the same day that Colon–Osorio received a sentence calculated to effect his immediate release from prison, the government unsealed a new criminal complaint charging him as a fugitive in possession of firearms. The district court dismissed these charges on double jeopardy grounds because the government's proof of fugitive status would necessarily rely on the same conduct for which Colon–Osorio had been punished in the first prosecution. The case on which the district court primarily relied, *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), has since been overruled. *See United States v. Dixon*, — U.S. —, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). Under the Supreme Court's current formulation of double jeopardy jurisprudence, we are obliged to reverse.

## I. *Facts*

Luis Colon–Osorio is a member of Los Macheteros, an organization dedicated to the independence of Puerto Rico. In 1985, along with seventeen other members of Los Macheteros, and two non-members, Colon–Osorio was arrested in Puerto Rico and charged with aiding and abetting and conspiring in the planning and execution of a 1983 robbery of $7 million from a Wells Fargo depository in West Hartford, Connecticut.[1]

Colon–Osorio was detained without bail for seventeen months, and then ordered released to the District of Puerto Rico in December 1986. On September 24, 1990, Colon–Osorio issued a communique stating that he was "going underground to rejoin the clandestine struggle" for the independence of Puerto Rico. A criminal complaint alleging violation of conditions of pre-trial release was filed the following day, and an arrest warrant issued.

A Connecticut district court ordered Colon–Osorio to appear for a hearing on the government's motion to forfeit his bond on December 17, 1990. He failed to appear. The same court ordered him to appear for jury selection in the criminal trial on January 13, 1992. He failed to appear a second time. On March 17, 1992, Colon–Osorio was arrested in Puerto Rico, allegedly in possession of a semi-automatic pistol, ammunition, and a live hand grenade, as well as cocaine and marijuana. He was transferred to Connecticut and charged with two counts of failure to appear following release on bail, pursuant to 18 U.S.C. § 3146(a).[2] A jury convicted him of these charges on December 9, 1992 and, on January 29, 1993, he was sentenced to 318 days imprisonment.

In the interim, between conviction and sentencing, two events occurred. First, on January 19, 1993, the government dismissed the indictments against Colon–Osorio stemming from the Wells Fargo bank robbery case. Second, on the day before his sentencing, the United States brought a criminal complaint in Puerto Rico, unsealed the next day, charging him with possession of the firearms and drugs allegedly confiscated at the time of his arrest in Puerto Rico. The subsequent indictment charged Colon–Osorio with three counts of possession of a firearm as a fugitive from justice, in violation of 18 U.S.C. § 922(g)(2),[3] and two counts of possession of a controlled substance, in violation of 21 U.S.C. § 844(a).

---

1. For further factual background on the Wells Fargo robbery case, as well as a detailed analysis of the legal issues the case involved, see *United States v. Maldonado–Rivera*, 922 F.2d 934 (2d Cir.1990).

2. This statute provides: "Whoever, having been released under this chapter knowingly ... fails to appear before a court as required by conditions of release ... shall be punished as provided in subsection (b) of this section."

3. This statute provides: "It shall be unlawful for any person ... who is a fugitive from justice ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any fire-

The district court dismissed the fugitive-in-possession charges on double jeopardy grounds. The court first determined that 18 U.S.C. § 3146(a)(1), the failure to appear provision, was a "species of lesser-included offense" of 18 U.S.C. § 922(g)(2), making the second prosecution an impermissible repetition of the first one. Alternatively, the court found that the second prosecution was barred by *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084 (1990), in which the Supreme Court held that to establish an essential element of an offense charged in a second prosecution, the government could not rely on conduct for which the defendant already had been prosecuted. The district court concluded that the government would have to rely on the conduct proving Colon–Osorio's failure to appear in order to establish the flight element of the section 922(g)(2) offense.[4]

On appeal, the government contends that the Supreme Court's recent opinion in *United States v. Dixon*, —— U.S. ——, 113 S.Ct. 2849 (1993), controls the resolution of this case. It points out that the *Dixon* Court flatly overruled *Grady v. Corbin*, thus undermining one of the district court's bases for finding a double jeopardy bar to the second prosecution. Additionally, the government argues that applying the traditional double jeopardy analysis set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and reaffirmed in *Dixon*, compels the conclusion that there are two separate offenses, permitting the fugitive-in-possession prosecution to proceed.

Colon–Osorio recognizes that *Grady v. Corbin* no longer supports his claim of double jeopardy, but his reading of *Dixon* otherwise differs from the government's. He claims that *Dixon* bolsters the district court's conclusion that his bail jumping offense is completely included in the fugitive-in-possession charge, and that his prosecution for that charge is therefore barred on double jeopardy grounds.

■ Whether principles of double jeopardy bar a subsequent prosecution is an issue for plenary review. *United States v. Aguilar–Aranceta*, 957 F.2d 18, 21 (1st Cir.1992).

## II. *Double Jeopardy Law*

■ The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb...." U.S. Const. amend. V. Under this clause, a defendant is protected from both successive prosecutions and multiple punishments for the same criminal offense. *See North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *United States v. Rivera–Martinez*, 931 F.2d 148, 152 (1st Cir. 1991).

■ In *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180 (1932), the Supreme Court ruled that punishment for two statutory offenses arising out of the same criminal act or transaction does not violate double jeopardy if "each provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182. The *Blockburger* test focuses on the statutory elements of each offense.[5] "If each requires

arm or ammunition which has been shipped or transported in interstate or foreign commerce."

4. The district court also noted a potential venue problem if a single trial had been sought for both violations. Opinion at 9, n. 10. The government notes that an exception to the double jeopardy bar on subsequent prosecutions may lie where the State is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain the charge have not yet been discovered or occurred, despite the exercise of due diligence, *see Brown v. Ohio*, 432 U.S. 161, 169, n. 7, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187 (1977), and urges us to extend this exception to embrace legal impediments as well, such as where venue restrictions prevent the government from joining all charges in a single district.

However, the government cites no authority which supports this proposition. Because we find no double jeopardy bar to the second prosecution under section 922(g)(2), we need not reach this issue.

5. We recognize that there may be some instances in which courts may look beyond the general terms of the statutes at issue, such as when the charged statute is criminal contempt. *See Dixon*, —— U.S.——, ——, 113 S.Ct. 2849, 2855–59, 125 L.Ed.2d 556 (1993) (Scalia, J., joined by Kennedy, J.); *id.* at ——, 113 S.Ct. at 2876 (White, J., joined by Stevens, J.); *but see id.* at ——, 113 S.Ct. at 2865–69 (Rehnquist, C.J., joined by O'Connor, J. and Thomas, J.); *id.* at ——, 113 S.Ct. at 2880–81 (Blackmun, J.) The case at bar, however, does not present such a situation.

proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Ianelli v. United States,* 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293–1294, 43 L.Ed.2d 616 (1975); *see also United States v. Felix,* —— U.S. ——, ——, 112 S.Ct. 1377, 1382, 118 L.Ed.2d 25 (1992).

In *Brown v. Ohio,* 432 U.S. 161, 166–67, 97 S.Ct. 2221, 2225 (1977), the Supreme Court acknowledged that the *Blockburger* test was not the only standard used to determine whether successive prosecutions were the "same offence" for double jeopardy purposes. The *Brown* Court noted that in some circumstances where a second prosecution would require relitigation of factual issues already resolved by the first, successive prosecutions were barred, notwithstanding the fact that the two offenses involved were sufficiently different to permit the imposition of consecutive sentences under *Blockburger.* The Court pointed to *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), and *In re Nielsen,* 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889), to support this proposition. In *Ashe,* the Court ruled that principles of collateral estoppel embodied in the Double Jeopardy Clause barred a second prosecution for robbery of one person when the defendant had been acquitted of robbery of another person in the same incident. In *In re Nielsen,* the Court held that a conviction for cohabiting with two wives over a two and one-half year period barred a subsequent prosecution for adultery with one of the wives on the day following the end of that period. Although strict application of *Blockburger* would have permitted imposition of consecutive sentences, in both cases, the Court found that these separate offenses were the "same" for double jeopardy purposes, and barred the second prosecutions. *Brown,* 432 U.S. at 166–67 n. 6, 97 S.Ct. at 2226.

In 1990, in *Grady v. Corbin,* 495 U.S. at 508, 110 S.Ct. at 2084, the Court, reviewing over a century of double jeopardy jurisprudence, looked to *Ashe* and *In re Nielsen* as evidence that double jeopardy analysis must extend beyond *Blockburger.* The *Grady* Court recognized a distinction between multiple punishment and successive prosecution cases, noting that successive prosecutions raised concerns beyond punishment which justified a more robust standard by which to review double jeopardy for these cases.

The *Grady* majority asserted that, in cases of multiple punishment, the purpose of the Double Jeopardy Clause was to prevent the sentencing court from prescribing a greater punishment than that authorized by the legislature. 495 U.S. at 2090, 110 S.Ct. at 2091. In that context, *Blockburger* functioned as a "'rule of statutory construction,' a guide to determining whether the legislature intended multiple punishments." *Id.* 495 U.S. at 516, 110 S.Ct. at 2091 (quoting *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 677, 74 L.Ed.2d 535 (1983)). By contrast, successive prosecutions raised concerns beyond excessive punishment, such as questions of finality, harassment, and the risk of erroneous conviction. In this context, the Double Jeopardy Clause also served as a check on the state's prosecutorial power, insuring that the state, "with all its resources and power," did not misuse its authority over individual defendants. *Id.* (quoting *Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957)).

Under *Grady,* to determine whether the Double Jeopardy Clause barred a subsequent prosecution, a court first applied the traditional *Blockburger* test. If the subsequent prosecution survived the *Blockburger* test, the court then determined whether establishing an essential element of an offense charged in that prosecution would require the government to prove conduct that constitutes an offense for which the defendant already has been prosecuted. 495 U.S. at 521, 110 S.Ct. at 2093. If so, the second prosecution was barred. *Id.*

In *Dixon v. United States,* —— U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), the Court renounced *Grady's* "same conduct" test and affirmed that the *Blockburger* analysis governs both multiple punishment and successive prosecution cases.[6] Writing for a 5–4 majority, Justice Scalia, in *Dixon,* essentially adopted the reasoning of his dissent in *Grady* to argue that *Grady's* "same conduct" rule lacked constitutional roots, and was wholly inconsistent with Supreme Court pre-

---

**6.** In the three years since *Grady,* the composition of the Court changed, resulting in a shift in the majority view of the history and precedent underlying the Double Jeopardy Clause.

cedent and the common-law understanding of double jeopardy. —— U.S. at ——, 113 S.Ct. at 2860. In his view, the *Grady* Court had overstated the limitations of the Double Jeopardy Clause, in practice embracing a requirement that would have all charges arising from a single criminal transaction tried in a single proceeding. *Grady*, 495 U.S. at 538, 110 S.Ct. at 2102. The Court in *Dixon* thus narrowed the scope of inquiry in successive prosecution cases.

### III. *Application of Dixon*

■ Applying the *Dixon/Blockburger* "same elements" test to the facts of this case compels the conclusion that the defendant may be prosecuted for being a fugitive in possession of firearms under 18 U.S.C. § 922(g)(2) despite his earlier conviction under 18 U.S.C. § 3146 for failure to appear. To secure a conviction under section 3146(a)(1), the government must prove that (1) the defendant has been released on bail pending trial, sentencing, or appeal; (2) the defendant was required to appear before a court; and (3) the defendant knowingly failed to appear. The fugitive-in-possession charge requires proof (1) that a defendant fled to avoid prosecution for a crime; (2) that he knowingly possessed a firearm; and (3) that the firearm was possessed in or affecting commerce.

Each statute clearly requires proof of elements that the other does not. Under section 3146, for example, the government must prove that defendant was released on bail, and was required to appear before a court. These elements are not required under section 922(g), as a person may be a fugitive from justice without having been released on bail, and without being required to appear before a court. Section 922(g) requires that the defendant possess a firearm, which is not a required element for a violation of section 3146(a). Therefore, prosecution for these two offenses is not barred by *Blockburger/Dixon*.

The district court made this same observation, but rejected the technical comparison of the statutes' elements as too cursory. The court found that this case was comparable to *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) (per curiam), where the Supreme Court held that a prosecution for robbery with a firearm, following defendant's conviction for felony murder based on the robbery, was barred by double jeopardy principles. The Supreme Court later explained this result by noting that, for double jeopardy purposes, it did not consider "the crime generally described as felony murder as a separate offense distinct from its various elements." *Illinois v. Vitale*, 447 U.S. 410, 420, 100 S.Ct. 2260, 2267, 65 L.Ed.2d 228 (1980). Rather, robbery with a firearm was a "species of lesser-included offense" of the felony murder for which Harris already had been prosecuted. *Id.*

Relying on *Harris*, the district court found that, on the specific facts of this case, section 3146(a)(1) was a "species of lesser-included offense" of section 922(g)(2). The court explained that in order to prosecute Colon–Osorio for a violation of section 922(g)(2), the government must show that Colon–Osorio was a fugitive from justice, which, in turn, required a showing that he fled to avoid prosecution. In this case, the government would rely on proof of the same conduct which comprised proof of his bail jumping offense under section 3146: that he was on bail for an indictment in Connecticut; that he was required to appear before a court; and that he failed to appear. Noting that these were all the "elements necessary in the previous prosecution for violations of section 3146(a)(1)," the district court held that section 3146 was a "species of lesser-included offense" of section 922(g)(2) and, therefore, that *Blockburger* barred the government from prosecuting Colon–Osorio under this section.

The district court's analogy lacks force in the aftermath of *Dixon*. In the first place, *Harris'* status is unclear. The Supreme Court in *Grady* had pointed to *Harris* to support its argument that *Blockburger* was not the exclusive test to vindicate the Double Jeopardy Clause's protection against multiple prosecutions. *Grady*, 495 U.S. at 518–519, 110 S.Ct. at 2092. The *Dixon* Court overruled this proposition, holding that both multiple prosecution and multiple punishment cases are to be assessed under the identical standard, *Blockburger*'s "same elements" test. *Dixon*, —— U.S. at ——, ——, 113 S.Ct. at 2856, 2860. A majority of the justices criticized an interpretation of *Harris* which supports the proposition that the *Blockburger* test is insufficient to determine whether a successive prosecution is barred, and that conduct, not merely statutory elements, must be the object of the double

jeopardy inquiry. *Id.* at ——, 113 S.Ct. at 2861. These same justices disagreed, however, over *Harris'* application, leaving open the possibility that a majority could still view *Harris* as providing an exception to the *Blockburger* approach. *See* —— U.S. at ——, 113 S.Ct. at 2866–67 (Rehnquist, C.J., concurring and dissenting); *id.* at ——, 113 S.Ct. at 2857 n. 2 (Scalia, J.).[7]

In any event, this case is distinguishable from *Harris.* In *Harris,* the Court barred a second prosecution for the offense that had been used to establish an element of the felony murder offense for which the defendant was convicted. By contrast, bail jumping is *not* an offense on which the government will rely to establish Colon–Osorio's fugitive status. The government merely will rely on the same *conduct* that the government proved to establish Colon–Osorio's bail jumping offense.

Indeed, the district court's analysis is precisely what the *Dixon* Court rejected. Under *Dixon,* the fact that the government will attempt to prove that Colon–Osorio was a fugitive by referring to the same conduct used to prove the elements of failure to appear does not offend the Double Jeopardy Clause. The same actions can constitute an offense under two distinct statutes and can be prosecuted separately under each statute as long as the statutes do not define a single offense within the meaning of *Blockburger. United States v. White,* 1 F.3d 13, 17 (D.C.Cir.1993); *see also Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182 (quoting *Morey v. Commonwealth,* 108 Mass. 433 (1871)).

*The district court's decision therefore must be REVERSED.*

Before BREYER, Chief Judge, ALDRICH and COFFIN, Senior Circuit Judges, TORRUELLA, SELYA, CYR, BOUDIN and STAHL, Circuit Judges.

ORDER OF COURT

The panel of judges that rendered the decision in this case having voted to deny the petition for rehearing and the suggestion for the holding of a rehearing en banc having been carefully considered by the judges of the Court in regular active service and a majority of said judges not having voted to order that the appeal be heard or reheard by the Court en banc,

It is ordered that the petition for rehearing and the suggestion for rehearing en banc be denied.

---

**7.** ·*Dixon* involved the question of whether defendants who had been prosecuted for criminal contempt of court for violating court orders subsequently could be tried for crimes arising out of the same conduct which was the subject of the contempt prosecution. While a majority of the Court joined to reaffirm *Blockburger*'s application to successive prosecution cases, and to overrule *Grady v. Corbin*'s "same conduct" test, there was significant disagreement among this same majority regarding the effect of this change. Chief Justice Rehnquist, in an opinion joined by Justices O'Connor and Thomas, focused his criticism on Justice Scalia's application of *Harris.*

He contended that Justice Scalia improperly invoked *Harris.* In looking to the facts that had to be proven to show a violation of the specific court orders at issue, and not to the generic elements of the crime of contempt of court, Justice Scalia effectively resurrected the *Grady* analysis that the Court had just rejected. *Dixon,* —— U.S. at —— – ——, 113 S.Ct. at 2866–67 (Rehnquist, C.J., concurring and dissenting). *See also id.* at ——, 113 S.Ct. at 2857 n. 2 (Scalia, J., criticizing Chief Justice Rehnquist's interpretation of his analysis of *Harris* ). Therefore, whether *Harris* still provides an exception to *Blockburger* remains unclear post-*Dixon.*