**UNITED STATES of America, Plaintiff,**

**v.**

**Richard D. GOLDBERG, Defendant.**

**Crim. A. No. 95–10223–RCL.**

United States District Court,
D. Massachusetts.

Jan. 26, 1996.

---

Morris M. Goldings, David R. Kerrigan, Mahoney, Hawkes & Goldings, Boston, MA, for defendant.

Michael Kendall, United States Attorney's Office, Boston, MA, for U.S.

*MEMORANDUM AND ORDER*

LINDSAY, District Judge.

The defendant Richard Goldberg is charged with five counts of mail fraud (18 U.S.C. § 1341), two counts of wire fraud (18 U.S.C. § 1343), seven counts of use of the mails and facilities in interstate commerce to promote bribery (18 U.S.C. § 1952(a)(3), the "Travel Act"), and one count of conspiracy to violate all of the above (18 U.S.C. § 371). He has moved to dismiss the indictment for multiplicity, or, in the alternative, for duplicity. He argues that the mail and wire fraud counts, Counts 2 through 8, are multiplicitous because the violations of law they allege are preempted by the bribery counts, Counts 9 through 15. He also claims that the mail and wire fraud counts are duplicitous. For the reasons stated below the motion is DENIED.

## I. THE ALLEGATIONS OF THE INDICTMENT

The relevant sections of the statutes under which Goldberg has been charged provide as follows.

*Mail Fraud:*

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, ... for the purpose of executing such scheme or artifice or attempting to do so, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or ... takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail ... any such matter or thing ... [shall be criminally punished].

18 U.S.C. § 1341 (1995).

*Wire Fraud:*

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire,

radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, ... [shall be criminally punished].

18 U.S.C. § 1343 (1995).

*Travel Act:*

(a) whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to—

.         .         .         .         .

(3) ... promote ..., carry on, or facilitate the promotion, ... or carrying on, of any unlawful activity, and thereafter performs or attempts to perform—

(A) an act described in paragraph ... (3) [shall be criminally punished].

(b) As used in this section (i) "unlawful activity" means ... (2) ... bribery, ... in violation of the laws of the State in which committed ....

18 U.S.C. § 1952 (1995).

*Scheme or Artifice to Defraud Defined:*

For the purposes of this chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services.

18 U.S.C. § 1346 (1995).

*Offenses Against the United States Defined:*

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C. § 2 (1995).

The mail and wire fraud counts are premised upon an alleged scheme by Goldberg involving five alleged uses of the mails and two alleged uses of telephones to arrange for the rental and payment of other expenses for a vacation house allegedly used by Massachusetts legislators during a period in which Goldberg had a direct monetary interest in overturning a gubernatorial veto of legisla-tion regarding an eminent domain proceeding. The Travel Act counts are based upon the same seven alleged communications. The conspiracy count is not implicated by this motion.

Three of the mail fraud counts are alleged to involve the placing of a check into the mails; the other four, as well as the wire fraud counts, are alleged to involve only the exchange of lease information. The indictment is silent as to whether the checks subsequently entered the mails or other facilities of interstate commerce. The indictment alleges no false statements or other misrepresentations by Goldberg or anyone else. The mail and wire fraud counts allege a scheme by Goldberg to defraud the Commonwealth of Massachusetts and its citizens of the honest services of the legislators and a scheme by him to obtain money or property by false or fraudulent pretenses, representations, or promises. They do not allege a scheme by him or artifice to defraud anyone of money or property. Each mail and wire fraud count also includes a reference to violation of 18 U.S.C. § 1346 and a violation of 18 U.S.C. § 2.

## II. DISCUSSION

### A. Multiplicity

#### 1. Multiplicity Defined

"An indictment is multiplicitous and in violation of the Fifth Amendment's Double Jeopardy Clause if it charges a single offense in more than one count." *United States v. Brandon,* 17 F.3d 409, 422 (1st Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 80, 81, 130 L.Ed.2d 34 (1994), *citing United States v. Serino,* 835 F.2d 924, 930 (1st Cir.1987). The dangers posed by a multiplicitous indictment are that a defendant may suffer multiple punishments for the same offense, and that the jury may be prejudiced by the appearance that the defendant has committed more crimes than the evidence supports. 1 Charles A. Wright, *Federal Practice and Procedure,* § 142, at 475–76 (1982); *United States v. Reed,* 639 F.2d 896 (2d Cir.1981) (mail fraud charges not multiplicitous of securities fraud charges). "The test of whether an indictment is multiplicitous is straight-

forward," *Serino* at 930. That test was first announced in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932):

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

*Blockburger* at 304, 52 S.Ct. at 182. The *Blockburger* test is primarily a test of legislative intent; because Congress can impose lengthy or multiple punishments under a single statute, it may similarly divide the same punishment into discrete offenses. *See Whalen v. United States*, 445 U.S. 684, 688–89, 100 S.Ct. 1432, 1435–36, 63 L.Ed.2d 715 (1980) (Double Jeopardy Clause at least bars federal courts from imposing consecutive sentences where not authorized by Congress); *Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616 (1975) (*Blockburger* test serves function of identifying legislative intent); *Albernaz v. United States*, 450 U.S. 333, 340, 101 S.Ct. 1137, 1142–43, 67 L.Ed.2d 275 (1981) (*Blockburger* test a rule of statutory construction which governs unless overcome by a clear indication of contrary legislative intent; Double Jeopardy inquiry solely one of congressional intent).[1]

█ Because authority to determine the extent to which criminal statutes may overlap rests with Congress, the *Blockburger* test focuses on the elements required to be proved under the statute, not on the factual allegations in the indictment. *See United States v. Parrilla–Tirado*, 22 F.3d 368, 372 (1st Cir.1994) (*Blockburger* permits multiple offenses arising from the same conduct, so long as statutory elements are distinguishable). The court must examine the statute as cited in one count of the indictment to determine if it states an offense which is distinguishable from offenses alleged in other counts. *Cf., United States v. Mena*, 933 F.2d 19, 29 (1st Cir.1991) (separate charges under separate provisions of same statute compared by reference to elements charged). Narrowing the view of the statute to the sections cited in the indictment is necessary to ensure that the charge is sufficiently clear to permit the defendant to prepare a defense and to plead double jeopardy. *Cf., Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907–08, 41 L.Ed.2d 590 (1974) (establishing test for sufficiency); *United States v. Fusaro*, 708 F.2d 17, 23 (1st Cir.), *cert. denied*, 464 U.S. 1007, 104 S.Ct. 524, 78 L.Ed.2d 708 (1983). Because the primary concern underlying the construction of the cited statute is notice to the defendant, however, the court should take a practical view to the language of the indictment. *See United States v. Doherty*, 867 F.2d 47, 55–56 (1st Cir.) (Breyer, Circuit Judge) (where mail fraud indictment invalidly charged scheme to defraud intangible rights and listed money as further object of conspiracy to defraud, valid offense stated with constitutionally sufficient clarity), *cert. denied*, 492 U.S. 918, 109 S.Ct. 3243, 106 L.Ed.2d 590 (1989). A separate problem entirely is raised if the jury is instructed that it may convict the defendant for some offense not charged by the grand jury in the indictment. *See Ex parte Bain*, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887) (Fifth Amendment Grand Jury Clause violated by conviction of defendant for offense other than that alleged in indictment). Because the parties are not yet in a position to raise this issue of variance, however, this discussion will be limited to the statutory charges.

It is important at this point to note a distinction which recurs throughout these doctrines. The *Blockburger* test speaks of different "offenses," and requires that two offenses be distinct to be charged in different counts. Conversely, under the test for duplicity, if two offenses are distinct, they may

---

1. The legislative history of the Travel Act, which is the later of the two provisions, makes no reference to the mail fraud statute, noting only that the Act is not intended to preempt *state* enforcement of the predicate offenses. *See* 1961 U.S.C.C.A.N. 2664, 2665–6. A subsequent amendment of the language to "uses the mail or any facility in interstate or foreign commerce," from "uses any facility of interstate or foreign commerce, including the mail," was adopted without any apparent comment. *See* 1990 U.S.C.C.A.N. 6472. In any case, there is no "clear indication of contrary legislative intent," sufficient to override *Blockburger* analysis.

not be alleged in a single count. Yet a statute will often list, in the disjunctive, multiple ways in which the same statute may be violated, without creating multiple offenses. Wright unravels this tangle adroitly:

> [T]he question is whether a statute creates several offenses or merely describes ways and means by which a single offense may be committed. Rule 7(c) permits allegations in a single count that defendant committed an offense by one or more specified means. Accordingly if the statute is read as creating a single offense involving a multiplicity of ways and means of action and procedure, the charge can be laid in a single count, and indeed the use of several counts would involve multiplicity. But if the statute includes several different offenses, to charge them in a single count would be duplicitous. This is neatly illustrated by a case involving the wagering tax laws. A count in the information charging defendants with having engaged in the business of accepting wagers as principal and agent was held good, since it was said that the gravamen of the offense was the engaging in the business of accepting wagers either as principal or agent. Another count in the same information was dismissed as duplicitous. It charged defendant with failure to file returns as required by the cited statutory section. The court held that the statute contemplated a series of returns, and that failure to file any of them would constitute an offense.

1 Wright § 142 at 470–73 (1982), *citing Driscoll v. United States,* 356 F.2d 324, 332 (1st Cir.1966), *vacated on other grounds,* 390 U.S. 202, 88 S.Ct. 899, 19 L.Ed.2d 1034 (1968). The tests for multiplicity and duplicity may not be precise mirror images, however; to find counts of an indictment duplicitous, a court may require more than simply separate offenses under *Blockburger. United States v. Waldeck,* 909 F.2d 555, 558 (1st Cir.1990) (rejecting duplicity claim where arguably distinct charge overborne by clear and unequivocal charge which notified defendant as to the theory under which the government was proceeding).

The rationale the Supreme Court has relied upon at least since *Iannelli* in rebuffing challenges to *Blockburger, see United States v. Dixon,* 509 U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) (*Blockburger,* not "same conduct" rule, applies to subsequent prosecutions), rests upon the power of *Congress* to define permissible areas of overlap between criminal statutes.[2] Once Congress' intent to create separate offenses is determined, the government retains discretion to charge single or multiple offenses, subject to judicial review only of the notice afforded to the defendant and the ultimate consistency between the indictment and the jury charge.

### 2. The *Seda* Rule

Goldberg objects to the level of generality used to define the contours of the offenses alleged by the government, claiming that the "rigid, look-at-the-statute approach" of the *Blockburger* test is inapplicable in some cases. *United States v. Seda,* 978 F.2d 779, 781 (2d Cir.1992). In *Seda,* the Second Circuit (over a dissent by Judge Kearse) found an indictment alleging violations of 18 U.S.C. § 1344 (bank fraud) and 18 U.S.C. § 1014 (false loan application) arising from a single loan application to be multiplicitous, even while conceding that § 1014 could be violated by a false loan application intended to defraud some party other than a bank, thus evading § 1344. *Id.* at 781–82.[3] Defendant

---

**2.** The Court in *Dixon* split deeply over the question of whether exceptions to the *Blockburger* test exist when one of the offenses involved is criminal contempt, in which the predicate acts are not defined or limited by Congress at all, but by a district judge. *See United States v. Liller,* 999 F.2d 61, 63 (2d Cir.1993) (describing *Dixon* Court's lines of division). The resolution of this question is closely tied to broad, theoretical issues raised by statutes incorporating predicate acts, including the Travel Act, the conspiracy statute, and RICO. Harmonizing these strands of double jeopardy law, while clearly relevant to the issue at hand, is an ambitious project and one not necessary to the disposition of the present motion.

**3.** § 1344, which contains analogous language to § 1341 and § 1343 (indeed, it was modeled after those statutes), imposes criminal punishment on "[w]hoever knowingly executes, or attempts to execute, a *scheme or artifice*—

> (1) *to defraud* a financial institution;
> *or*
> (2) *to obtain any of the moneys,* funds, credits, assets, securities, *or* other *property* owned by,

cites *Seda* for the proposition that statutes which govern a broad range of conduct—in *Seda*, the bank fraud statute—present a heightened danger of multiplicity which, under *Whalen v. United States*, 445 U.S. at 694, 100 S.Ct. at 1439, requires a court to look not only at the plain language of the statute, but also at the facts alleged by the government.

*Whalen*, however, does not support this reading of *Blockburger*. The Court in *Whalen* found multiplicity between rape and felony murder statutes by looking at the statute and finding murder in the course of five felonies other than rape to be different *offenses*, which could just as well have been prohibited by different statutory provisions, rather than different *means* of violating a single statute. *See Whalen* at 694, n. 8, 100 S.Ct. at 1439, n. 8 ("[W]e do not in this case apply the *Blockburger* rule to the facts alleged in a particular indictment .... [w]e have simply concluded that, for the purposes of imposing cumulative sentences ... Congress intended rape to be a lesser offense included within the offense of a killing in the course of rape."). It bears noting as well that the felony murder statute treated rape as a predicate act, all the elements of which would by definition be fully proved.

Moreover, the First Circuit has declined so much as to mention *Seda*, even in dealing with multiplicity charges against the same statute, § 1344. *See, e.g., U.S. v. Smith*, 46 F.3d 1223, 1234 (1st Cir.), *cert. denied,* — U.S. ——, 116 S.Ct. 176, 133 L.Ed.2d 116 (1995). Another court in this district has recently expressed some skepticism as to the likelihood that this Circuit would accept *Seda*, in light of the Court of Appeals' consistent reference to *Blockburger*. *See United States v. Brennick*, 908 F.Supp. 1004, 1014–15 (D.Mass.1995) (Gertner, J.). The Su-

preme Court not long ago reaffirmed its adherence to *Blockburger, see Dixon,* 509 U.S. at ——, 113 S.Ct. at 2860; *Witte v. United States*, — U.S. ——, ——, 115 S.Ct. 2199, 2204, 132 L.Ed.2d 351 (1995); and the relevant First Circuit cases clearly support the same conclusion. *See, e.g., Parrilla–Tirado*, 22 F.3d at 372 (*Blockburger* test focuses on statutory elements, not conduct); *United States v. Colon–Osorio*, 10 F.3d 41, 46 (1st Cir.) (under *Dixon*, reliance on the same conduct for subsequent prosecution does not violate Double Jeopardy, so long as *Blockburger* test satisfied), *cert. denied,* — U.S. ——, 114 S.Ct. 2749, 129 L.Ed.2d 867 (1994); *but see Colon–Osorio*, 10 F.3d at 43, n. 5 (Under a plurality in *Dixon*, "there may be some instances in which courts may look beyond the general terms of the statutes at issue, such as when the charged statute is criminal contempt.")[4] Because *Blockburger* has been frequently endorsed by this Circuit and the Supreme Court, while the *Seda* rule has attracted little coherent support, this Court should and will apply the *Blockburger* test to determine whether § 1341 and § 1343 are preempted by § 1952.

### 3. *Blockburger* Applied

■ The Travel Act violations alleged in the indictment require the proof of facts not needed for conviction under the mail/wire fraud statutes, specifically the proof of an unlawful act (here, bribery) *after* the use of the mail or wire at issue. The multiplicity challenge thus applies only to the mail and wire fraud charges. Defendant's contention is that the Travel Act is a broad statute which can easily swallow mail and wire fraud allegations whole, and thus the court should examine more carefully the substance of the charges for variances in proof. Under the

---

or under the custodial control of, a financial institution, *by means of false or fraudulent pretenses, representations, or promises* ....
18 U.S.C. § 1344 (1990) (emphasis on overlapping language with § 1341, § 1343 added). *But cf. United States v. Lilly*, 983 F.2d 300, 304 (1st Cir.1992) (interpretation of § 1341 does not govern § 1344 for multiplicity purposes, where mail fraud statute criminalizes each mailing, while bank fraud criminalizes execution of scheme).

4. The Supreme Court's intervening decision in *Dixon* may also place *Seda* on shaky ground insofar as it questions the *Blockburger* approach. *Compare United States v. Wolfswinkel*, 44 F.3d 782, 785 (9th Cir.1995) (*Dixon* disposes of *Seda* ), *with Liller*, 999 F.2d at 63 (contending that *Seda* survived *Dixon;* indictment in question found to satisfy both *Seda* and *Blockburger* tests). As an interpretive matter, *Seda*'s definition of a "broad" statute seems too amorphous to justify judicial interference with a legislative prerogative long recognized by the Supreme Court.

authorities cited above, however, the proper question is whether the portion of the mail and wire fraud statutes recited in the indictment demand proof which does not fall under the long shadow cast by the cited section of the Travel Act.

The government is able to throw light on only one such element: the requirement of proof of the devising of a scheme or artifice. The difficulty with this argument is that bribery, by definition, constitutes a scheme or artifice to defraud the Commonwealth and its citizens under the government's own theory. Indeed, the indictment alleges no other scheme. It is difficult to conceive of a state law against bribery, sufficient to trigger § 1952(b)(2), which did not encompass facts suggesting a scheme or artifice to defraud someone.

*United States v. Faulhaber*, 929 F.2d 16, 19 (1st Cir.1991), however, suggests an alternative ground. In that case, a defendant had been convicted of one count of mail fraud arising from the same fact pattern as several counts of securities fraud. The First Circuit rejected a multiplicity challenge as "far-fetched," finding, among other things, that the mail fraud statute required proof of a connection between the fraud and a mailing, where the securities fraud statute requires *either* use of the mails *or* use of any facility of interstate commerce.[5] Because the Travel Act contains language identical to that used by the securities fraud provision at issue in

*Faulhaber* ("uses the mail or any facility in interstate or foreign commerce"), this court is bound by the First Circuit's interpretation, and DENIES defendant's motion.[6] *See also United States v. DiStefano*, 361 F.Supp. 971, 976–77 (M.D.Fla.1973) (§ 1341 and § 1952 create separate and distinct offenses, such that prior conviction for mail fraud did not raise Double Jeopardy bar to Travel Act conviction on same bribery scheme, where trials were similar in all aspects except for substitution of use of other interstate facilities for use of the mails); *cf., United States v. Corona*, 804 F.2d 1568, 1571, n. 2 (11th Cir.) (Under superseding indictment, "additional, new counts of mail fraud and Travel Act violations in this case would satisfy the *Blockburger* test."), *cert. denied*, 481 U.S. 1017, 107 S.Ct. 1896, 95 L.Ed.2d 503 (1987).

## B. Duplicity

### 1. Duplicity Defined

■ Goldberg's second challenge is analytically related to his first. He asserts that the indictment is duplicitous because it alleges a violation of § 1346, which is definitional, in the same counts as the violations of § 1341 and § 1343. An indictment is duplicitous if it joins in a single count two or more distinct and separate offenses. 1 Wright § 142, at 469 (1982). The vice of a duplicitous indictment is that it fails adequately to notify the defendant of the charges so that he or she

---

**5.** 15 U.S.C. §§ 78j(b), 78ff. *Faulhaber* is unclear as to whether the particular securities fraud count at issue alleged any use of a facility other than the mails; each count seems to have involved the processing of checks through the Federal Reserve check processing system, which may have involved use of interstate wires. The First Circuit focuses, however, on the statutes, not the indictments, so it must be presumed that only the statutory elements were relevant.

The mail fraud statute also makes reference to frauds using a "private or commercial interstate carrier." The scope of this language has not been judicially interpreted in the context of the mail fraud statute. Because it was added in a 1994 revision of § 1341, however, it is not relevant to the scope of the statute in 1990, under which Goldberg's alleged activities occurred.

**6.** An additional basis for upholding the indictment might exist if the mail and wire fraud statutes alleged two distinct purposes for the scheme to defraud: to defraud the Common-

wealth and its citizens of honest services, and to defraud the Commonwealth of money or property. In that case, the mail/wire fraud counts as alleged would require proof of a fact—the intent to defraud the Commonwealth of money or property—which is not necessary to a bribery conviction under § 1952(b)(2), as it pertains to M.G.L. Ch. 268A, § 3. *See United States v. Sawyer*, 878 F.Supp. 279, 286–88 (D.Mass.1995). This argument was accepted by the Ninth Circuit in *United States v. Garner*, 632 F.2d 758, 760 (9th Cir.1980) (use of the telephone supporting prior wire fraud conviction properly supported Travel Act indictment, where scheme to defraud different victim alleged), *cert. denied*, 450 U.S. 923, 101 S.Ct. 1373, 67 L.Ed.2d 351 (1981). Because the indictment does not allege such an objective for the scheme to defraud; because *Faulhaber* provides adequate grounds for denial; and because *Garner* comes too close to *Seda* for comfort in its reliance on the allegations in the indictment, *Garner* is not persuasive.

may raise a defense or plead double jeopardy, and that, by alleging independent bases for conviction on a single count, it creates the possibility that the jury could convict without reaching a unanimous finding of guilt on either charge. 1 Wright § 142, at 475 (1982); *United States v. Huguenin*, 950 F.2d 23, 26 (1st Cir.1991).

An indictment is duplicitous only if two *offenses* are alleged in the same count, not two *means* of violating the same provision. It might seem, for example, that the government inherently creates duplicity by alleging alternative facilities of interstate commerce in each Travel Act count so as to evade the multiplicity problem. That is, if the government takes the *Faulhaber* position that it is alleging use of the mails or other facility of interstate commerce, one might suspect that the two theories require alternative factual bases, and that general verdicts of guilt might be reached by the jury without unanimity on the underlying facts if, for example, six jurors found use of the mails and six relied on some other facility (particularly in the three counts which included the mailing of a check). It is well settled, however, that the government may so plead. Rule 7(c)(1) provides, inter alia, that

> It may be alleged in a single count that the means by which defendant committed the offense are unknown or that the defendant committed it by one or more specified means.

Fed.R.Crim.P. 7(c)(1) (1995). *See also United States v. Miller*, 471 U.S. 130, 142–44, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985) (upholding mail fraud conviction where government offered proof at trial of only one of two schemes to defraud outlined in indictment; indictment may allege multiple means of violation of statute).

### 2. Goldberg's Duplicity Claim

■ Goldberg's claim is wholly without merit. Because § 1346 merely explains the theory of honest services fraud, it is not a distinct factual offense for which the jury could punish Goldberg.[7] In fact, under

*McNally v. United States*, 483 U.S. 350, 358–59, 107 S.Ct. 2875, 2880–81, 97 L.Ed.2d 292 (1987), reference in the indictment to § 1341 and § 1343 without reference to § 1346 might not be sufficient to state an offense. At minimum, reference to § 1346 is helpful to the defendant in specifying the government's charge. *See United States v. Dempsey*, 768 F.Supp. 1256, 1268–69 (N.D.Ill.) (charges of "intangible rights" mail and wire fraud raised no duplicity claim, as § 1346 merely offered an alternative fraudulent objective in violation of § 1341 and § 1343, and citation to § 1346 "could not possibly be more relevant" to distinguishing counts which occurred after its passage) *affirmed in relevant part, sub nom. United States v. Ashman*, 979 F.2d 469, 477 n. 1 (7th Cir. 1992). To claim that such specificity invalidates the indictment is to stand the traditional safeguards against vague indictments on their head. *See United States v. Waldeck*, 909 F.2d at 558 (rejecting duplicity claim where indictment fairly notified defendant as to the theory under which the government was proceeding); *Doherty*, 867 F.2d at 55. Defendant's actual theory seems to be that the citation to § 1346 is multiplicitous, in that it creates the prejudicial appearance of charging him with more statutory crimes than he is factually alleged to have committed. This appearance will necessarily be cured once the jury is instructed as to the charges. *Dempsey*, 768 F.Supp. at 1269.

### 3. The Real Duplicity Problem

■ An additional duplicity theory suggested by the government has more merit. Apparently misconstruing defendant's motion as if it raised a genuine claim of duplicity, the government draws attention to the fact that each mail and wire fraud count claims both a scheme to defraud honest services and a scheme to obtain money or property by false or fraudulent pretenses, representations, or promises. The mail and wire fraud statutes create two separate types of frauds: (1) schemes to defraud, whether or not any spe-

---

7. Interestingly, Goldberg does not challenge the inclusion of 18 U.S.C. § 2 in each count of the indictment. This section is, like § 1346, definitional, in that it demonstrates how Goldberg could be liable for the acts of his lobbyist. His failure to challenge its equally routine citation demonstrates the emptiness of his argument.

cific misrepresentations are involved, and (2) schemes to obtain money or property by false or fraudulent pretenses, representations, or promises. *United States v. Clausen*, 792 F.2d 102, 104 (8th Cir.), *cert. denied*, 479 U.S. 858, 107 S.Ct. 202, 93 L.Ed.2d 133 (1986).[8] The second provision was added in a 1909 revision of the criminal code in recognition of a Supreme Court determination that the statute reached beyond the breadth of common law fraud, which did not cover false promises. *See Durland v. United States*, 161 U.S. 306, 16 S.Ct. 508, 40 L.Ed. 709 (1896); *McNally*, 483 U.S. at 357–59, 107 S.Ct. at 2880–81.

There remains some dispute as to whether a scheme to obtain money or property by false or fraudulent pretenses, representations, or promises is a separate offense from a scheme to defraud. It is clear that a conviction for a scheme to defraud does not require proof of any false statement, which is the *sine qua non* of the second provision. *See United States v. Frankel*, 721 F.2d 917, 920 (3d Cir.1983); *United States v. LeDonne*, 21 F.3d 1418, 1426 (7th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 584, 130 L.Ed.2d 498 (1994); *United States v. Cronic*, 900 F.2d 1511, 1513–14 (10th Cir.1990); *United States v. Halbert*, 640 F.2d 1000, 1007 (9th Cir.1981); *United States v. Margiotta*, 688 F.2d 108, 121 (2d Cir.1982), *cert. denied*, 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983). The Tenth Circuit has concluded that the two are separate offenses. *See Cronic*, 900 F.2d at 1513–14 (separate offenses; where jury was charged only as to false pretenses, government was saddled with burden of proving a false statement, which is not required to prove scheme to defraud); *United States v. Migliaccio*, 34 F.3d 1517, 1522 (10th Cir.1994) (separate offenses).[9]

Application of *Blockburger* analysis suggests that the two provisions are not distinguishable. A "scheme to obtain" requires proof of a false statement and must have as its object deprivation of property rights, while a "scheme to defraud" may be established without proving a false statement and, under § 1346, without showing that property was its object. There appears to be no element of a "scheme to defraud," however, which could be omitted from proof of a "scheme to obtain." The First Circuit not long ago, in connection with § 1344, noted that "the terms 'scheme' and 'artifice' are defined to include 'any plan, pattern or cause of action, *including false and fraudulent pretenses and misrepresentations* ...'" *United States v. Brandon*, 17 F.3d at 424, *quoting United States v. Goldblatt*, 813 F.2d 619, 624 (3rd Cir.1987) (emphasis added). Similarly, "false promises" was explicitly found to be included in the "scheme to defraud" provision of the pre–1909 statute in *Durland*, an understanding which was continued in the revised statute. *McNally*, 483 U.S. at 357, 107 S.Ct. at 2880. Since the intent to obtain money or property is clearly encompassed within "schemes to defraud", *id.*, at 358, 107 S.Ct. at 2881, there is simply nothing left of the second provision which could support a conviction which fell outside the first. *But cf., Doherty*, 867 F.2d at 60 ("scheme to obtain" independently supported conviction where jury improperly instructed on "scheme to defraud"). Thus an indictment which charges both types of schemes in the conjunctive merely states alternate means under *Miller*. *See United States v. Frequency Electronics*, 862 F.Supp. 834, 845 (E.D.N.Y. 1994) (indictment charging scheme to defraud the United States and scheme to obtain money by false pretenses from the United States under Major Frauds Act, 18 U.S.C. § 1031(a)(1–2), not duplicitous; count charges two means, not two offenses); *Le-*

**8.** The cited language from § 1341 and § 1343 appears in at least three other prohibitive criminal statutes: § 1344 (outlined above), § 1031 (the Major Frauds Act), and § 2314 (interstate transport of stolen property).

**9.** *Migliaccio* cites *United States v. Falcone*, 934 F.2d 1528, 1539, n. 28 (11th Cir.), *affirmed in relevant part*, 960 F.2d 988, 990, n. 6 (en banc), *cert. denied*, 506 U.S. 902, 113 S.Ct. 292, 121

L.Ed.2d 216 (1992), as supporting a theory of separate offenses; actually, the cited footnote merely recites cases such as *Cronic* and *Clausen* to support the considerably less controversial proposition that the mail fraud statute "forbid[s] both schemes to defraud that do not involve false pretenses or representations, and schemes to defraud by means of such false pretenses or representations."

*Donne,* 21 F.3d at 1427 (conjunctive charge proper under § 1344; proof of any one may support conviction); *United States v. Stone,* 954 F.2d 1187, 1190–92 (6th Cir.1992) (same).

The Supreme Court seems to have treated the two species of fraud as components of the same crime. *See McNally v. United States,* 483 U.S. at 358–59, 107 S.Ct. at 2881 (while false pretenses provision is stated in disjunctive, 1909 amendment was merely a clarification of reach of statute, so that second part modifies first); *Carpenter v. U.S.,* 484 U.S. 19, 27, 108 S.Ct. 316, 321, 98 L.Ed.2d 275 (1987) (discussing two parts of statute without distinction). The Court in *McNally,* after deciding that a scheme to defraud the citizens of a state of the honest services of officials of the state government did not fall within the "scheme to defraud" provision of § 1341, proceeded to reject the government's contention that the conviction could stand on false pretenses ground, because there had been no jury instruction requiring the conviction to rest on a false statement to obtain property. *McNally,* 483 U.S. at 360–61, 107 S.Ct. at 2881–82. This does not suggest that the two are mutually exclusive; rather, the Court found that, because the jury, in keeping with its instructions, could have convicted on a theory falling outside the then scope of *either* provision, evidence supporting a conviction within the bounds of the statute could not cure the error. *But see Doherty,* 867 F.2d at 58 (*McNally* error harmless beyond a reasonable doubt, where finding that defendants engaged in scheme logically entailed belief that they intended to reap the monetary rewards of the scheme).

While there is a certain analytical clarity to the Tenth Circuit's division of provisions of the mail fraud statute which requires different elements into separate offenses, the overlap between the two provisions is so great that this court will not lightly align itself with a theory which would allow most counts of mail fraud, as currently charged, to be charged twice. The Supreme Court has not retreated from its construction in *McNally* that the two provisions modify each other. The First Circuit, in construing analogous provisions of the bank fraud statute (§ 1344), found that an indictment charging a scheme to defraud *and* to obtain money by means of false or fraudulent pretenses, representations, or promises in the conjunctive adequately apprised the defendant of the government's intent to charge him under both prongs. *United States v. Fontana,* 948 F.2d 796, 801 (1st Cir.1991). The First Circuit distinguished *Cronic* on the grounds that the government did not need to prove misrepresentations because the trial court charged the jury *in the disjunctive. Fontana,* 948 F.2d at 801–2. The clear implication is that it was entirely permissible for the jury to be presented with the two provisions as alternatives. So long as this raised no duplicity problem for the First Circuit, this court need not be concerned.

## III. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the indictment as multiplicitous or duplicitous is DENIED.

So ordered.